THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
AMARIAH H. BRADNER, Appellant.

*It seems* that where the record on appeal in a criminal action from a judg.
ment of a court of general jurisdiction discloses upon its face that the
court had no jurisdiction, or that the constitutional method of trial by
jury was disregarded, or that there was some other fundamental defect in
the proceeding which could not be waived or cured, it is the duty of the
appellate tribunal to reverse, although the question was not formally
raised in the court below and is not presented by any ruling or exception
on the trial.

Where an indictment is found in a court of Oyer and Terminer, to give
jurisdiction to the Court of Sessions to try it, there must be an order of
the Oyer and Terminer remitting it to the Sessions for trial.

To sustain, however, upon appeal, a judgment of the Court of Sessions on
trial of such an indictment, it is not essential that the record should
affirmatively show that such an order was made; in the absence of proof
to the contrary this will be presumed.   The Court of Sessions is a superior
court and its jurisdiction is presumed.

*Frees* v. *Ford* (6 N. Y. 176) distinguished.

The distinction between limitation of jurisdiction and inferiority of juris.
diction pointed out.

The history of Courts of Sessions given.

*It seems* that an arraignment and plea are necessary, preliminary to a legal
trial upon an indictment.   (Code Crim. Pro., §§ 296, 310.)

A formal plea of not guilty, however, is not necessary to put the defendant
on trial; a demand of trial by him is equivalent to such a plea.

The record herein stated that "defendant on arraignment pleaded not guilty,"
and that thereafter, by leave of the court, he withdrew his plea and moved

to dismiss the indictment. The record then contained the decision of the court denying the motion; a statement of the proceedings and evidence on trial, which showed that defendant was present with his counsel and took part in the trial; also, the finding of a verdict of guilty. *Held,* it was to be inferred that all parties regarded the plea as withdrawn for the purpose of the motion only, and that it was reinstated when the motion was denied.

A motion for a new trial in a criminal action, on the ground of newly discovered evidence, can only be granted where the motion is made before judgment. (Code of Crim. Pro., §§ 463, 466.) ·

The omission of the clerk in his entry of judgment in a criminal action to state the offense for which the conviction was had, as required by the Code of Criminal Procedure (§ 485), does not render the sentence void. The defect is amendable; and, upon appeal to this court, other parts of the record may be referred to, and if they furnish evidence of the fact so omitted in the entry, the court may conform the entry to the fact. (§ 543.)

As to whether, in order to justify the detention of a defendant under said Code (§ 486), it is necessary that the entry in the minutes, with a copy of which he is to be furnished. should show the offense, *quære.*

(Argued June 23, 1887: decided October 4, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made April 19, 1887, which affirmed a judgment of the Court of Oyer and Terminer of the county of Livingston, entered upon a verdict convicting the defendant of the crime of grand larceny, and which denied a motion for a new trial. (*Mem.* of decision below, 44 Hun, 233.)

The material facts are stated in the opinion.

*Joseph W. Taylor* for appellant. The defendant having been arraigned and never having pleaded to the indictment, the whole trial is a nullity. (Code of Crim. Pro., §§ 296, 297, 298, 299, 308, 309, 332, 333, 334, 342, 344, 345, 532, 538; *Maurer* v. *People,* 43 N. Y. 1; 4 Black. Com., 322, 332; Bishop Crim. Pro., § 648; 3 Whart. Crim. Law, § 3154; 2 Arch. Crim. Law, § 418; 2 Hale's Pleas of the Crown, 217; Roscoe's Crim. Ev. [7th ed.] 194; *R.* v. *Fox,* 10 Cox Cr. C. 502; *U. S.* v. *Riley,* 5 Blatch. 204; *U. S.* v. *Borger,* 19 id. 250: *Hoskins* v. *People,* 84 Ill. 87; *Johnson* v. *People,* 22 id. 314; *Yundt* v. *People,* 65 id. 372; *Gould* v. *People,* 89 id. 216; *Ayles* v.

*People*, 65 id. 301; *Jenkins* v. *State*, 10 Ind. 140; *Graeter* v. *State*, 54 id. 159; *Tindall* v. *State*, 71 id. 314; *Weaver* v. *State*, 83 id. 289; *U. S.* v. *Gilbert*, 2 Sumn. 67–70; *Hill* v. *State*, 1 Yerg. [Tenn.] 76; *Link* v. *State*, 3 Heisk. [Tenn.] 252; *Douglas* v. *State*, 3 Wis. 820; *Davis* v. *State*, 38 id. 487; *State* v. *Saunders*, 53 Mo. 234; *State* v. *Montgomery*, 63 id. 296; *McQuillen* v. *State*, 8 S. & M. 595; *Sartorious* v. *State*, 24 Miss. 602; *Wilson* v. *State*, 42 id. 639; *Jacobs* v. *Comm.*, 5 S. & R. 317; *Dougherty* v. *Comm.*, 69 Penn. St. 286; *Grigg* v. *People*, 31 Mich. 471; *Sperry* v. *Comm.*, 9 Leigh, 623; *State* v. *Lartigue*, 6 La. An. 103; *Davis* v. *State*, 39 Md. 383; *People* v. *Corbet*, 28 Cal. 328; *People* v. *Gaines*, 52 id. 479; *Hayes* v. *State*, 58 Ga. 46; *State* v. *Hughes*, 1 Ala. 655; *Younger* v. *State*, 2 W. Va. 579; *Burley* v. *State*, 1 Neb. 385; *Preuit* v. *State*, 5 id. 377; *Meacham* v. *Austin*, 5 Day, 236; *Ray* v. *People*, 6 Cal. 234; *Gaither* v. *State*, 8 Crim. L. M. 754; *Cancemi* v. *People*, 18 N. Y. 136; *Vose* v. *Cockroft*, 44 id. 422; *Blend* v. *People*, 41 id. 606; *Shaw* v. *People*, 3 Hun, 280; *Grigg* v. *People*, 31 Mich. 471; Code Crim. Pro., § 485; *Messner* v. *People*, 45 N. Y. 1.)  The judgment entered in Livingston county and affirmed by the Supreme Court is wholly insufficient.  (Code Crim. Pro., §§ 37, 39, 144, 268, 272, 485.) It is insufficient because it does not state, briefly or otherwise, any offense for which a conviction has been had.  (Penal Code, § 566; Laws of 1886, chap. 593.)  If the conviction is for false pretenses, the sentence is in excess of that allowed by law, three years.  (Penal Code, § 566; Code Crim. Pro., § 486.) The Court of Sessions of Livingston county had no jurisdiction to try the indictment.  (Code Crim. Pro., § 37, tit. 5, chap. 1; id. § 39.)  The minutes of the trial should show the adjournments of the court during the trial, and all proceedings properly forming part of the trial.  (Code Crim. Pro., §§ 415, 485.) The return should show that the defendant was personally present during the trial.  (*Maurer* v. *People*, 43 N. Y. 1; Code Crim. Pro., § 356; *Stephens* v. *People*, 19 N. Y. 549; *Graham* v. *State*, 40 Ala. 659; *Hamilton* v. *Comm.*, 16 Penn. St. 129; *Jeffries* v. *Comm.*, 12 Allen, 145; *State* v. *Able*, 65

Mo. 37.) The refusal of the Court of Sessions to grant the motion to vacate the judgment on the ground of want of power was erroneous. (Code Crim. Pro., § 466 ; *Quimbo Appo* v. *People*, 20 N. Y. 543 ; *Ex parte Lange*, 18 Wall. 178.) The sentence having been partly executed, the Court of Sessions has lost all control over its judgment, and can neither modify it nor amend the record. (*Ex parte Lange*, 18 Wall. 178.)

*George W. Daggett* for respondent. It was for the jury to decide whether the testimony of Barbara Leiter should be believed. (*Quincy* v. *Young*, 5 Daly, 327 ; *McCall* v. *Moschowitz*, 1 N. Y. 115 ; *People* v. *Jones*, 3 id. 252.) The General Term could not entertain a motion for a new trial on the ground of newly discovered evidence made after judgment. (Code Crim. Pro., §§ 462, 466 ; *People* v. *Hovey*, 1 N. Y. Cr. R. 324, 471.)

ANDREWS, J. The defendant was indicted at the Oyer and Terminer, in the county of Livingston, for grand larceny, in obtaining from one Barbara Leiter the sum of $1,500 by means of a check for that amount, which he induced her to sign under the false pretense that it was a check for the sum of $100. (Penal Code, 528.) The indictment was found May 4, 1885, and the trial thereon was had in the Court of Sessions of Livingston county, commencing April 28, 1886, and resulted in the conviction of the defendant, who was thereupon sentenced by the court to imprisonment in the State prison for the term of five years. The principal questions presented on this appeal do not arise upon any ruling made on the trial, or in any proceeding subsequent to the trial. They are questions raised on the record alone, and which were not, in any way, called to the attention of the trial court. If the record discloses upon its face that the court had no jurisdiction, or that the constitutional method of trial by jury was disregarded (*Cancemi's Case*, 18 N. Y. 128), or some other defect in the proceedings, which could not be waived or cured and is fundamental, it would, as we conceive, be the duty of

an appellate tribunal to reverse the proceedings and conviction, although the question had not been formally raised in the court below, and was not presented by any ruling or exception on the trial. We are of opinion, however, that no errors of this character are disclosed in the record before us.

It is insisted that the Court of Sessions had no jurisdiction to try the indictment, for the reason that there was no order of the Oyer and Terminer remitting the indictment to that court for trial. There can be no doubt that such an order was essential to confer jurisdiction upon the Court of Sessions to try the indictment. The power of the Oyer and Terminer to remit indictments pending therein to the Court of Sessions for trial, and conversely, of the Court of Sessions to remit indictments from that court to the Oyer and Terminer, existed under the Revised Statutes and is continued under the present procedure. (Code Crim. Pro. §§ 39, 41.) The only exception is of indictments for crimes punishable with death, which may be found in either court, but are triable only in the Oyer and Terminer. The record in this case is silent as to the existence or non-existence of an order remitting the indictment in question to the Sessions. It does not state whether such an order was made or not. But there is nothing in the record which justifies an inference, as matter of fact, that the indictment was not regularly sent by the Oyer and Terminer to the Sessions. The bare fact that no order appears in the record does not show that an order was not made. The omission may have resulted from inadvertence in making up the record. The question is, therefore, presented, whether, in order to the validity of the judgment rendered, the record must affirmatively show that the Sessions acquired jurisdiction by virtue of an order of the Oyer and Terminer remitting the indictment.

In the argument in *Peacock* v. *Bell* (1 Saund. 73), the rule of jurisdiction is said to be "that nothing shall be intended to be out of the jurisdiction of a superior court but that which specially appears to be so; and, on the contrary, nothing shall be intended to be within the jurisdiction of an inferior court but that which is so expressly alleged;" and this statement of

the rule has been frequently approved. "Superior courts," says the learned annotator of Smith's Leading Cases (1 S. L. C. 991) "are presumed to act by right, and not by wrong, and their acts and judgments are consequently conclusive in themselves, unless plainly beyond the jurisdiction of the courts from which they emanate;" and many cases are cited in support of this statement. Indeed, the general doctrine thus stated is nowhere controverted, but, in applying the rule, it must first be determined whether the court whose judgment is in question is to be regarded as a superior or inferior court, and, therefore, entitled or not, as the case may be, to the benefit of the presumption of jurisdiction. There is a qualification of the general rule stated in Saunders, to be found in some of the cases, depending upon the fact whether the question of jurisdiction arises collaterally, or in a direct proceeding in error, to review the judgment. There is also another inquiry which has given rise to much debate, and that is, whether jurisdictional facts shown by the record of a judgment of a court of general jurisdiction to exist, can be controverted. That question received great consideration in this court in the case of *Ferguson* v. *Crawford* (70 N. Y. 253). The present case presents simply the question of presumption as applied to the judgment under review, the record being silent, neither affirming nor denying the existence of the jurisdictional fact in controversy. There is a well-settled distinction between limitation of jurisdiction and inferiority of jurisdiction. Every court is subject to some limitation of jurisdiction, territorial or otherwise. No court can act without the boundaries of the jurisdiction by which it is created. Courts of equity and common law courts, when separately constituted, are confined each to its appropriate sphere. The Circuit and District Courts of the United States exercise a limited jurisdiction and are subject to have their judgments reviewed by another tribunal, but they are not inferior courts within the rule in Saunders, and jurisdiction of their proceedings and judgments is presumed, at least, where assailed collaterally. (*Ruckman* v. *Cowell,* 1 N. Y. 505; *Chemung*

*Bank* v. *Judson*, 8 id. 254.) Courts of Sessions in counties are not inferior courts in a technical sense. Their origin dates far back in the colonial period. Courts of Sessions were established in each county in the province of New York, by the "act to settle Courts of Justice," passed in 1683, with general criminal and civil jurisdiction (see Rev. Laws, 1813, App.), and they have been continued from that date to this as criminal courts in each of the counties of the State. Their jurisdiction (under the name of General Sessions of the Peace), as defined by the Revised Statutes (2 R. S. 208, § 5), extended to make inquiry by a grand jury of all crimes committed or triable in the county, and to the trial and punishment of all crimes not punishable by death or by imprisonment in the State prison for life. The Code of Criminal Procedure has removed one of the restrictions in the Revised Statutes, so that all crimes are now triable in Courts of Sessions, except crimes punishable with death, and has, in other respects, extended and enlarged their powers (§ 39). During the whole history of the State, Courts of Sessions have exercised a very extensive jurisdiction in criminal cases, and we can perceive no reason why their judgments are not entitled to every presumption attaching to courts of enlarged and general jurisdiction. The court is presided over by a judge learned in the law. It acts through a grand and petit jury and proceeds according to the course of the common law. It determines all questions of personal liberty affected by crime, and is only precluded from trying indictment for crimes punishable with death. The accused has the benefit of counsel, the decisions of the court are subject to review, and all the safeguards designed for the protection of persons accused of crime attend its proceedings. We think it would be difficult to assign any valid reason why the same presumption of regularity and jurisdiction should not be indulged to uphold the judgment of a Court of Sessions, as is indulged in in respect to judgments of the Oyer and Terminer, or why, if the present appeal was from a conviction at the Oyer and Terminer on an indictment found at the Sessions, a presumption that the indictment had

been duly remitted, should be indulged in the one case and not in the other. *Foot* v. *Stevens* (17 Wend. 483) was an action of debt on a judgment of the Court of Common Pleas of the county of Genesee. The record did not show that the court had acquired jurisdiction of the person of the defendant, and it was objected that the judgment was void. The court overruled the objection and on motion for a new trial it was held that Courts of Common Pleas, although relatively inferior courts, and subject to the control of the Supreme Court by *mandamus, certiorari,* etc., were to be regarded as courts of general jurisdiction, and that when nothing to the contrary appears, it will be intended in support of a judgment therein that the court had jurisdiction of the person, although not averred in the record. The same question was decided in the same way in *Hart* v. *Seixas* (21 Wend. 40) on error from a judgment of the New York Common Pleas, and a reversal was sought on the ground that the record did not show that the court had acquired jurisdiction of the person of the defendant. The prevailing opinion was pronounced by COWEN, J., affirming the judgment, and it was held, that the fact that the question arose on error and not collaterally as in *Foot* v. *Stevens,* made no difference, and that the presumption attached alike in the one case as in the other. The case of *Hart* v. *Seixas* has been questioned (1 Smith's Leading Cases, 1021) as carrying the doctrine of presumption somewhat beyond its legitimate boundaries, but the case has been frequently cited in our reports with approval, and has never been overruled, and must be regarded as authoritative in our courts. (See *Chemung Canal Bk.* v. *Judson, supra.*) In *Frees* v. *Ford* (6 N. Y. 176) it was held that County Courts organized under the Constitution of 1846, are courts of special and limited jurisdiction, whose jurisdiction must appear on the face of their judgments, and will not be presumed. The Constitution of 1846 (Art. 6, § 14) declares that "the County Court shall have such jurisdiction in cases arising in Justice's Court and in special cases, as the legislature may prescribe, but shall have no original civil jurisdiction, except in such special cases." The decision in *Frees* v. *Ford* had refer-

ence to a court constituted under this limited and circumscribed power, and is not an authority applicable to a court possessing the broad and comprehensive powers of a Court of Sessions. The conclusion we have reached on the point of jurisdiction accords, we think, with the spirit of the authorities and is reasonable in itself. It can scarcely be doubted that as matter of fact the proper order remitting the case to the Sessions was made. Indeed it is so stated in one of the affidavits on the part of the defendant, made on a motion for a new trial. The indictment was treated by all parties as properly in the Sessions, and was tried without objection upon that assumption.

The learned counsel for the defendant raises the further objection that the defendant was not arraigned and did not plead to the indictment. The authorities are quite numerous to the effect that in a criminal case an arraignment and plea are essential and necessary preliminaries to a legal trial upon an indictment. (4 Black. Com. 322; Bishop's Crim. Pro. § 684; 3 Wharton's Crim. Law, § 3154.) Section 296 of the Code of Criminal Procedure declares that when the indictment is filed the defendant must be arraigned thereon. The defendant on arraignment may either demur or plead to the indictment (§ 321) and the plea makes the issue of law or fact to be tried. The object of the arraignment is to inform the defendant of the charge against him and have him answer the indictment. (4 Black. Com. 322.) A formal plea of not guilty is not necessary to put the defendant on trial. Under the Revised Statutes (2 R. S. 730, § 70) a demand of trial by a defendant was declared to be equivalent to a plea of not guilty. It is sufficient, we think, to constitute an issue that the defendant on his arraignment informs the court that he denies the charge or that he demands a trial. We are of opinion that the record in this case does sufficiently show an arraignment and plea. The record states that on May 13, 1885, the "defendant on arraignment pleaded not guilty." The record then proceeds "subsequently and after arraignment as aforesaid, the defendant by leave of the court

withdrew his plea and moved the court to dismiss the indictment under subdivision 2, section 313, Code of Criminal Procedure." Then follows the affidavits on which the motion to dismiss was made, and the decision of the court denying the motion; also a statement of the proceedings and evidence on the trial, and the finding by the jury of a verdict of guilty. It does not appear that there was a formal renewal of the plea of not guilty. But the parties proceeded as upon the trial of that issue. The defendant was present with his counsel and cross-examined the witnesses for the plaintiff, and introduced witnesses in his defense. It is a just inference that all parties regarded the plea as having been withdrawn for the purpose of the motion only, and proceeded to the trial on the understanding that it was reinstated when the motion was denied. The Code declares that " no indictment is insufficient, nor can the trial judgment or other proceedings thereon be affected by reason of any imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendants upon the merits." (Code of Crim. Pro.§ 285.) It would be sacrificing substance to form not to give effect to the transaction according to the plain understanding of the court and the parties.

Exceptions were taken by the defendant on the trial to the admission and rejection of evidence. They were fully considered by the General Term and none of them presents any doubtful or difficult question.

The defendant, after judgment, applied to the trial court to vacate the judgment to enable him to move for a new trial on the ground of newly discovered evidence. The court denied the motion on the ground that it had no power to grant the same. The power of a trial court to grant a new trial, given by section 463 of the Code of Criminal Procedure, is qualified by section 466, which declares that "the application for a new trial must be made before judgment." The affidavits upon which the motion was made, did not make a case upon which, within the established rule, a new trial could be granted. We think the application was improperly denied.

The final question in the case relates to the form of the judgment entered by the clerk in the minutes. The record contains (1) a copy of the indictment; (2) an arraignment and plea; (3) the proceedings on the motion to dismiss; (4) the minutes of the trial, including a statement of the finding by the jury of the verdict of guilty, and entries of various adjournments for the purpose of permitting the defendant to move for a new trial; (5) the affidavits read on the motion; (6) an entry entitled " *The People* v. *Amariah H. Bradner*," which is the minute of the judgment. This last entry recites the hearing of the motion for a new trial, its denial by the court, and then proceeds, " the said defendant being asked if he had any legal cause to show why judgment should not be pronounced against him, to which he answered, ' No ', it is ordered on this 8th day of June, 1886, that the defendant be imprisoned in the State prison at Auburn, N. Y., for the term of five years." Section 485 of the Code of Criminal Procedure provides that " when judgment upon a conviction is rendered, the clerk must enter the same upon the minutes, stating briefly the offense for which the conviction has been had, and must, upon the service upon him of notice of appeal, immediately annex together and file the following papers, which constitute the judgment-roll," etc. The judgment in a criminal case upon conviction is the sentence of the court. But it is essential for certainty and for the protection of all parties that it should be evidenced by a record. There must be a memorial of the judgment entered in the record of the court before the judgment can be executed. Section 485 does not contemplate the making up of a formal judgment record. The entry in the minutes stands as the record of the judgment, and, on appeal, this entry forms a part of the judgment-roll. The entry in this case does not fully conform to section 485, as it contains no statement of the offense of which the defendant was convicted. Looking at the whole record, which includes the indictment and the minutes of the trial, the fact appears. The question is whether this omission in the entry by the clerk makes the sentence void, so that the case stands

as if no judgment had been pronounced, or may the other parts of the record be referred to, and, if found to furnish evidence of the fact omitted in the entry, may this court conform the entry to the fact. Section 486 of the Code requires that where a judgment, except of death, has been pronounced, a certified copy of the entry thereof upon the minutes shall be furnished to the officer whose duty it is to execute the judgment, and declares that no other warrant or authority is necessary to justify or require its execution. We are not called upon to decide whether it is necessary, in order to justify a detention of a defendant under this section, that the entry in the minutes, with a copy of which he is to be furnished, should conform to the requirements of section 485, and show the offense of which the defendant was convicted. But we are of opinion that the defect in the entry is amendable on this appeal. By section 542 (Code Crim. Pro.) the court on appeal is required to give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. Section 543 declares that, " upon hearing the appeal the appellate court may, in cases where an erroneous judgment has been entered on a lawful verdict, correct the judgment to conform to the verdict; in all other cases they must either reverse or affirm the judgment appealed from, and in cases of reversal may, if necessary or proper, order a new trial." In this case the verdict and sentence were lawful, but a defective record of the judgment has been made. It may, we think, be regarded as an erroneous judgment within this section. The verdict authorized an entry of the judgment in accordance with section 483, but by negligence or inadvertence the statement of the offense was omitted, and if the entry is amended according to the truth as shown by other parts of the record, the judgment, as recorded, will conform to the verdict. It may be admitted that the primary object of section 543, was to provide for cases where an illegal sentence followed a lawful conviction, but still, we think the language and intent of the section fairly includes the present case.

The judgment should, therefore, be amended, by inserting a statement of the offense for which the conviction was had, and, as so amended, affirmed.

All concur.

Judgment accordingly.