In the Matter of the Application of JACK CEDAR, Respondent, for a Peremptory Order of Mandamus.*

JUDGES OF THE COURT OF GENERAL SESSIONS, NEW YORK COUNTY, Appellants.

First Department, February 23, 1934.

* See 147 Misc. 569.

*Felix C. Benvenga, Assistant District Attorney,* of counsel [*A. A. DeVito* with him on the brief; *Thomas C. T. Crain, District Attorney*], for the appellants.

*Leo H. Klugherz,* for the respondent.

MERRELL, J.   We are of the opinion that the order of the Special Term appealed from was improperly granted and should be reversed.

The undisputed facts are that on September 25, 1928, the petitioner, Cedar, was tried in the Court of General Sessions, New York county, upon an indictment charging him with grand larceny in the first degree.   During the progress of his trial the defendant was permitted to withdraw his plea of not guilty to the crime charged in the indictment, and to plead guilty to grand larceny in the second degree.   Besides the indictment under which the defendant was on trial, he was charged with the same crime of grand larceny in the first degree under two other indictments.   His plea of guilty to grand larceny in the second degree and the sentence imposed upon such plea covered the two other indictments for grand larceny in the first degree.   On November 15, 1928, the district attorney of New York county, under the provisions of section 1943 of the Penal Law, filed an information charging that the defendant, prior to his conviction upon his plea of guilty to grand larceny, had previously been convicted of three other felonies.

The defendant was tried on said information on November 20, 1928, and the jury found that he was the same person mentioned in the several records of conviction set forth therein. On December 10, 1928, the defendant, in accordance with the provisions of section 1942 of the Penal Law, was sentenced to life imprisonment in State prison. The evidence upon the trial of the information under section 1942 of the Penal Law showed the conviction of the defendant on December 1, 1915, of the crime of forgery, and that, upon such conviction, he was sentenced to Elmira Reformatory. The proofs further showed upon such trial of the information that on October 25, 1918, the defendant was convicted of the crime of grand larceny and sentenced to State prison for the term of four years. The evidence further established that on January 25, 1924, the defendant was convicted in the Court of Quarter Sessions of the Peace of the County of Philadelphia, Penn., before Hon. SAMUEL E. SHULL, a judge of said court, of the crime of false pretenses, to wit, offering and uttering a forged check of the value of $400, and sentenced to county prison for a period of two years. In the Pennsylvania indictment the following false pretenses were alleged: " That a certain check which he [the defendant] then and there requested the said Israel S. Titleman to cash for him, to wit, a certain check commonly known as and called a cashier's check, bearing date the fifteenth day of December, nineteen hundred and twenty-three, drawn upon the Central National Bank of the City of Detroit in the State of Michigan, for the payment of four hundred dollars to the order of one H. Robinson and signed 'A. Parker, Cashier ' had been cashed by him, the said George Maas [i. e., the defendant], in the City of Chicago, Illinois, for one H. Robinson the payee named in said check who was friend of him the said George Maas [the defendant]; and that the said certain check was a good and valid check and of the value of four hundred dollars; ". and the indictment specifically charged that by means of the false pretenses set forth therein, the defendant " did then and there unlawfully obtain from the said Israel S. Titleman and Frank M. Titleman, copartners trading as the Puritan Knitting Mills, certain moneys and property, to wit, the sum of four hundred dollars, lawful money of the United States of the value of four hundred dollars." At the trial in the Pennsylvania court the defendant first pleaded not guilty to said indictment, but later withdrew his plea of not guilty, and pleaded guilty to said indictment. It further appears that more than eight years after the aforesaid conviction in Pennsylvania, the Court of Quarter Sessions of the Peace, in which the conviction had been had, made an order, on the application of the defendant, amending the indictment against him so

as to show that the defendant had stolen the sum of $35 and not the sum of $400, as charged in said indictment. This amendment was upon an affidavit of one of the complainants to the effect that, as the result of the defendant's false pretenses, the complainants parted with the possession and actually lost only the sum of $35. The papers upon this appeal do not inform us as to how the complainants came to lose but $35 by cashing a forged check for $400, nor is there any explanation offered as to why the defendant should have pleaded guilty to obtaining by false pretenses the sum of $400, as charged in the indictment. The amendment of the Pennsylvania indictment reduces the amount claimed to have been obtained by the defendant through false pretenses from $400 to $35, the obtaining of which sum, under the statutes of New York, would constitute only a misdemeanor. This is the basis of the defendant's application to be relieved from the sentence imposed upon him upon the commission of a fourth felony. We are not informed as to the provisions of the Pennsylvania law governing the matter; but in the absence of evidence as to the law of that State, the presumption arises that the Court of Quarter Sessions of the Peace in the County of Philadelphia acted only within the limits of its power.

Upon the defendant's conviction as a fourth offender he at once commenced to serve the life sentence which was imposed upon him by the Court of General Sessions for New York county. On August 10, 1932, substantially four years after his conviction and sentence as a fourth offender, the defendant moved in the Court of General Sessions, New York county, that he be resentenced as a second offender, the statute containing no provision with reference to the sentencing of a third offender. The Court of General Sessions denied the motion of the defendant. Aside from the question as to whether the Pennsylvania court could, in 1932, legally amend the indictment upon which the defendant was convicted in 1924, we are of the opinion that the Court of General Sessions is without power to resentence the defendant, and that, as matter of law, the defendant is not entitled to a reconsideration of the sentence imposed upon him in September, 1928. We are of the opinion that any power on the part of the court to reconsider the sentence imposed upon the defendant in September, 1928, ended with the termination of the term or session of the Court of General Sessions at which he was thus sentenced. Said court was adjourned *sine die* on October 23, 1928. Therefore, the term or session of the court which had imposed the sentence upon the defendant had long since expired when the defendant moved for resentence in August, 1932. At that time he had actually served four years of the sentence

imposed. We think the Court of General Sessions is without power to reconsider, vacate, modify or amend the sentence imposed by that court in 1928. Under the law a session of the Court of General Sessions must be held each month, commencing on the first Monday of the month and continuing as long as, in the opinion of the judge sitting, the public interest requires. The Court of General Sessions is a court of record, and, therefore, the term may be adjourned from day to day or to a specified day, as long as may be necessary to complete any business properly brought before the court. In all criminal cases a judgment of conviction is the sentence of the court entered in the minutes of the court. *(People v. Bradner,* 107 N. Y. 1, 11; *People v. Markham,* 114 App. Div. 387, 389; *People v. Canepi,* 181 N. Y. 398, 402.) Unquestionably, the court has power, within definitely prescribed limits, to reconsider its judgment and to vacate, modify or amend it by reducing or increasing a sentence imposed, *but such power must be exercised at the term or session of the court at which the judgment was pronounced.* Thus, where a sentence has not been executed, the court may, in a proper case, during the term or session in which the sentence was rendered, reconsider it and may modify, amend or revise the sentence by either mitigating or even by increasing its severity. However, under the decisions, as we understand them, where the sentence has been put into execution, the court cannot, even during the term or session of the court at which the sentence was pronounced, modify, amend or revise it in any way. (*Ex parte Lange,* 85 U. S. 163, 167; *United States v. Murray,* 275 id. 347, 358; *United States v. Benz,* 282 id. 304, 306, 307.) The rule, as above stated, has prevailed from the earliest times. Lord COKE, in Coke on Littleton ([1st Am. ed.], vol. 2, § 438), says: " Yet during the terme wherein any judiciall act is done, the record remaineth in the brest of the judges of the court, and in their remembrance, and therefore the roll is alterable during that terme, as the judges shall direct; *but when the terme is past, then the record is in the roll, and admitteth no alteration, averment, or proofe to the contrarie.*" (Italics are the writer's.)

The rule was somewhat relaxed thereafter, and in 2 Sharswood's Blackstone Commentaries on the Common Law of England (p. 407), referring to the rule laid down by Lord COKE, above quoted, Blackstone wrote: " But now the courts are become more liberal, and, where justice requires it, will allow of amendments at any time *while the suit is depending,* notwithstanding the record be made up, and the term be past. For they at present consider the proceedings as in *fieri,* till judgment is given; and therefore, that till then they have power to permit amendments by the common

law; *but when judgment is once given and enrolled, no amendment is permitted in any subsequent term.*" (Italics are the writer's.) ·

In 2 Bishop New Criminal Procedure ([2d ed.] § 1298) that text-writer says: " But steps taken under a sentence — for example, a substantial part execution thereof — will cut off the right to alter it, even during the term. *And with the expiration of the term the power expires.*" (Italics are the writer's.)

In the quite recent case of *United States* v. *Murray* (*supra*), Chief Justice TAFT, citing *Ex parte Lange* (*supra*), states as follows: " The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it."

We certainly are of the opinion that the defendant is not entitled to resentence as matter of favor. Section 1942 of the Penal Law makes provision for the punishment of a person who " after having been three times convicted within this State, of felonies or attempts to commit felonies, or under the law of any other State, government or country, of crimes which if committed within this State would be felonious." Upon the filing of such information by the district attorney it is the court's duty, upon arraigning the defendant, to inform him of the allegations contained in such information and of his right to be tried as to the truth thereof. At the trial on the information the burden was upon the People not only to prove that he was the identical person mentioned in the Pennsylvania record of conviction, but that the defendant had been convicted of a crime in Pennsylvania which, if committed in this State, would be a felony. To meet such burden the People offered the record of the Pennsylvania conviction of the defendant in evidence. That record was conclusive evidence of the defendant's conviction in Pennsylvania, but it was only *prima facie* evidence of the facts therein involved or recited in the record of conviction. The defendant, upon the trial of the information, made no claim that the money theft by him was $35 and not $400. It was open to the defendant to show by competent evidence that, whereas the Pennsylvania indictment alleged the larceny of $400, the amount actually stolen was only $35. The defendant had his day in court. He was tried as to the " truth " of the allegations contained in the information. Opportunity was afforded him to rebut the proof offered by the People to show that the crime committed by him, for which he was convicted in Pennsylvania, would be a felony here, if committed here. Not having availed himself of the opportunity thus afforded, the defendant must be deemed to have conceded the truth of the facts as shown in the record of conviction in the Pennsylvania court. He should not now be heard to say that he was improperly tried and convicted under the information. We are,

therefore, of the opinion that the courts should not now be called upon to modify or amend the sentence pronounced four years ago merely because a court of a foreign State had attempted to amend the indictment upon which one of the prior convictions of the defendant was based or its court records with respect thereto. We are, therefore, of the opinion that no power lies in the Court of General Sessions to amend or modify the sentence pronounced four years ago at a term or session of the court which has long since expired, and that the defendant, having had his day in court, is not entitled to reconsideration of his sentence, either as a matter of law or as a favor.

The defendant is shown to be an habitual criminal. The papers on appeal disclose that the defendant, besides his conviction in Pennsylvania, was guilty of the commission of, at least, five other felonies, one for forgery, for which he was convicted and sentenced to the Elmira Reformatory, and four for grand larceny, his final conviction of grand larceny in the second degree, upon his plea of guilty, covering two other indictments, then pending against him, for grand larceny in the first degree. By his long criminal record the defendant forfeited all right to associate with his fellow men. No case could be more appropriate for the application of section 1942 of the Penal Law.

The order appealed from should be reversed, and the motion for a peremptory order of mandamus denied.

Finch, P. J., and Martin, J., concur; O'Malley and Untermyer, JJ., dissent upon the authority of *People ex rel. Sloane* v. *Lawes* (255 N. Y. 112).

Order reversed and motion denied.