THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH ALBANESE, Relator, *v.* WILLIAM HUNT, as Warden of Attica State Prison, Attica, New York, or His Successor, Respondent.

Supreme Court, Wyoming County, September 29, 1941.

*Salvatore C. Salvo,* for the relator.

*John J. Bennett, Jr., Attorney-General [Irene O'Sullivan, Assistant Attorney-General, of counsel], for the respondent.*

HINKLEY, J. . This is the return of a writ of habeas corpus. On October 18, 1927, relator was convicted in the County Court of Erie county of arson, third degree, after a trial which commenced on October 17, 1927. Relator was on November 4, 1927, sentenced to Attica State Prison for twenty years. The indictment on which relator was tried was presented to the Supreme Court at the September term, 1927, by a grand jury of that court. Careful examination

by the court of the clerk's minutes of Parts 1, 2, 3, 4, 5, 6, 7 and 8 of the Supreme Court, and of Parts 1 and 2 of the County Court, fails to disclose any record of a transfer of the indictment from the Supreme to the County Court. Part 1 of the Supreme Court is a non-jury part in which motions are made. Part 2 is the Equity Term and is a non-jury part where motions are sometimes made. Part 3 is the Criminal Term of the court where all criminal trials are held. All other parts of the court are civil jury terms.

There appears upon the indictment, apparently by rubber stamp, the following: " On motion of the District Attorney this indictment transferred to the County Court. Dated October 17/27. James V. Walsh, Special Deputy County Clerk." Beneath that is a similar statement signed " E. F. Coughlin," through which lines have been drawn as though an attempted erasure. No authority is shown for Coughlin to so rubber stamp the indictment and this attempted erasure indicates that it was either an error or done without authority.

Two affidavits of James V. Walsh have been filed with the court, one presented by relator's counsel and the other by the Attorney-General. Taken together they establish that the rubber stamp of Walsh upon the indictment was without semblance of authority and with an entire absence of any written record and establish conclusively that no order of transfer was ever made by the Supreme Court. Walsh, a special deputy county clerk assigned to the County Court, swears that he has no recollection of any transfer. The order of transfer of cases from the Supreme Court would not be made in the court to which he was assigned. There would, therefore, be no duty upon his part to do anything, nor any obligation upon his part to enter in his minutes a transfer to the County Court, nor would his duties necessarily require that he see that the transfer was properly made. That latter obligation rested upon the district attorney. The statement of Walsh that he stamped on the indictment his *usual* transfer stamp to the effect that the indictment was transferred to the *County* Court, indicates that he still is confused. For such act is not authorized, is unintentionally deceptive, and mere surplusage. The practice in which he frankly admits that he indulged, of taking the hearsay oral statements of district attorneys and rubber stamping and signing the indictments, was harmless save as it might in the excitement of criminal trials have lulled the district attorney and even the court into believing that an essential jurisdictional act had been performed. This court takes judicial notice of the fact that no written orders have been signed by the presiding justice or judge transferring indictments from the Supreme Court to the County Court or *vice versa*.

The statement of the clerk that he believes the memorandum entered in the clerk's minutes has been inadvertently lost is unintelligible. For the written inscriptions on the consecutively numbered and dated pages of the clerk's minute books could not be lost. If there had ever been an entry in the clerk's minutes it could only disappear by the aid of an ink eradicator, and there is no sign of erasures.

From the time of the presentation of the indictment to the Supreme Court to and including the day of the beginning of the trial in the County Court, there is no record in any clerk's minute book in any part of the Supreme or County Courts transferring the indictment. Judges may in open court by word of mouth make orders, but such orders become valid and are preserved only by the judge's signature or an entry in the clerk's minutes. The court is convinced that no order was ever made transferring the indictment herein from the Supreme to the County Court.

The Supreme Court, being one of general jurisdiction, is authorized to try an indictment found in a County Court, even though no formal order of transfer has been made or entered. Failure to object at the time of the trial waives any such defect. (*People* v. *Washor*, 196 N. Y. 104.) The County Court is a court of limited jurisdiction and has no authority to try an indictment found in the Supreme Court without an order of transfer by the Supreme Court. (*People* v. *Bradner*, 107 N. Y. 1, 5; Code Crim. Proc. §§ 22, 39, 343, 344, 346, 351.)

In the Supreme Court its jurisdiction is presumed. But in the County Court the presumption is to the contrary. The County Court is a court of limited jurisdiction; the jurisdictional facts must be found in the judgment and the presumption is that a court of limited and inferior jurisdiction is without jurisdiction when the jurisdictional facts are not established by the judgment. (*Frees* v. *Ford*, 6 N. Y. 176; *People* v. *Bradner*, *supra*, 8; *Gilbert* v. *York*, 111 N. Y. 544; *Thomas* v. *Harmon*, 122 id. 84, 88; *Matter of Baker*, 173 id. 249, 252.)

The case of *People* v. *Bradner* is not authority for the dismissal of this writ. In its opinion the court in that case reviewed the principles above cited and included a statement that a fundamental jurisdictional or constitutional defect could not be waived or cured. The court then held that a Court of Sessions was a superior and not an inferior court and that the record was silent neither offering nor denying the existence of the jurisdictional fact in controversy. In the instant case the record is clear that a jurisdictional defect exists; proceedings were had in an inferior court and the presumption that proceedings in the Supreme Court were regular cannot give to

the inferior court its jurisdiction; that it must be presumed that no order of transfer was made and that the records and the affidavit of Walsh disclose that no transfer was made.

The right to a writ of habeas corpus has always been one of the most carefully shielded rights of every individual. The constitutional right to counsel is lost to every prisoner the moment he enters the prison door unless he is a person of means. The relator should not be penalized for laches because fourteen years of his sentence have elapsed before he succeeded in employing a lawyer. If the government is desirous of rehabilitating convicts it will some day provide counsel or a public defender to prisoners without means in order to check up as to the constitutionality of their convictions and to represent them when appearing before the court upon writs of habeas corpus and before the Board of Parole. That Board, in its own judgment of a proper case, grants the gift of parole and can easily take back that boon. Surely the Board would function more successfully if skilled lawyers could present to the Board the other side of the case, leaving of course to the Board the last say. Until some such reform takes place the court will continue to be besieged with writs of habeas corpus by convicts who as paupers or otherwise must prepare their own papers, argue their own cases, and rely upon the court to protect their rights against the skillful and proper opposition of the highly trained legal staff of the Attorney-General. If this relator had been provided with counsel he would not have served fourteen years upon an illegal sentence of a court which never had jurisdiction to try and sentence him. No just mind would find him guilty of laches because it took fourteen years before he acquired the means to employ counsel.

Relator's record is such that it is unfortunate that by the sustaining of this writ he will not be under the jurisdiction of the Parole Board for the maximum term of his imprisonment. But the sustaining or dismissal of writs of habeas corpus does not rest in the discretion of the court.

Writ sustained and relator discharged from imprisonment.