Burke, J.
(concurring). I am in agreement with Judge Bergan that in this case the judgment of conviction should be affirmed. Here the case is supposedly in the ‘ ‘ normal appellate process,” but in actuality it is before us only because the Appellate Division reinstated an appeal dismissed over 20 years ago. The record indicates that under the standard of due process then enunciated by our courts defendant received a fair trial with the assistance of able counsel and the conclusion of the trial court and jury as to his guilt is even to this day unassailable in terms of justice. With the postindictment statement the People presented substantially identical and voluntarily given preindictment statements in addition to the testimony of eyewitnesses which established defendant’s role in the crime.
As Judge Bergan’s opinion so ably points out, it ordinarily has been the rule of this court that a question of law can only be reviewed where an objection has been raised at the trial. In over a century we have departed from this rule only on rare *52 occasions. (See Cohen and Karger, Powers of the New York Court of Appeals, p. 750.) In these few instances there has been either a jurisdictional defect below, which would have made the trial a nullity (see People v. Bradner, 107 N. Y. 1, 4-5), or there was a deprivation of a right so fundamental that defendant’s conviction on scant evidence was offensive to our concept of substantial justice. In People v. McLucas (15 N Y 2d 167), for example, we held that the trial court’s instructions to the jury which in effect made reference to the defendant’s failure to take the stand were “ seriously erroneous and prejudicial.” (15 N Y 2d, p. 171; emphasis supplied.) Therefore, I do not believe we should depart from our practice in a ease such as this where the allegedly improperly admitted evidence is merely cumulative to other admissible and overwhelming evidence of guilt which fully supports the conviction.
In the Appellate Division the defendant had a full and complete appellate review of every issue here raised, because in that court review is not restricted to issues preserved by an objection. The Appellate Division has discretion to order a new trial ‘ ‘ if it be satisfied that the verdict against the prisoner was against the weight of evidence or against the law, or that justice requires a new trial, whether any exception shall have been taken or not, in the court below.” (Code Crim. Pro., § 527.) As a matter of fact, in considering defendant’s contentions, that court expressly stated: “We recognize our right to reverse in the interests of justice (People v. Kelly, 12 N Y 2d 248) but we find nothing in this record that moves us towards such a conclusion.” (25 A D 2d 652, 653.)
In addition, even if we were to overlook for the moment the fact that no objection was made to the admission of defendant’s postindictment statement on the trial and consider his present constitutional objection to its admission based upon People v. Di Biasi (7 N Y 2d 544), People v. Waterman (9 N Y 2d 561), and Massiah v. United States (377 U. S. 201), reversal of defendant’s conviction is not called for. Application of the rule enunciated in those recent cases to the case at bar would clearly be injurious to the orderly administration of justice. As the recently decided cases of Johnson v. New Jersey (384 U. S. 719) and People v. McQueen (18 N Y 2d 337) so well illustrate, the theory that because a practice is held today not to meet current *53 standards of due process it necessarily constituted a denial of due process at an earlier time and is a ground for reversal today is to be rejected as jurisprudentially unsound.
In the Johnson and McQueen cases (supra) the issue was whether the rules propounded in Escobedo v. Illinois (378 U. S. 478) and Miranda v. Arizona (384 U. S. 436) should be applied retroactively, and both our court and the Supreme Court recognized the disorder such retroactive application of these rules would cause in the administration of justice. As the Supreme Court pointed out in Johnson the real key to determining whether such disorder was warranted was whether the newly enunciated rule “ affected ‘ the very integrity of the fact-finding process ’ and averted ‘the clear danger of convicting the innocent.’” (384 U. S., supra, pp. 727-728.) The court noted further that the “ choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved ’ ’ (p. 728).
The rule barring the use of postindictment statements is in reality not fundamentally different in its effect upon the ‘ ‘ integrity of the fact-finding process ” than that laid down in Escobedo and Miranda (supra). Hence it should not be applied to cases in this State in which the statement was taken by the authorities long before the rule in People v. Di Biasi (supra) was announced. Even though there has been some indication by the Supreme Court that the Massiah rule is to be applied retroactively (see McLeod v. Ohio, 378 U. S. 582, 381 U. S. 356, and Lyles v. Beto, 379 U. S. 648), the status of these cases as authority for the proposition that the Massiah rule is to be accorded retroactive application is extremely doubtful. Both McLeod v. Ohio (supra) and Lyles v. Beto (supra) were decided on the papers submitted in support of the petition for certiorari and without benefit of oral argument and the brief Per Curiam opinions handed down in each give no indication that the court considered the possibility that the rule might be applied only prospectively. Both cases were decided prior to Johnson (supra) and if the analysis employed in Jolnmson is here applied the conclusion is inescapable that the Massiah rule should have only prospective application.
Under the circumstances of this case there is no showing that due process calls for an exception to the rule requiring an objec *54 tion before a question of law may be reviewed by the Court of Appeals. Nor are the proven facts of this 25-year-old case such as to justify a finding that because of a newly coined rule of evidence a new trial is required.