Meyer, J.
(dissenting). Respectfully I disagree with this court’s exercise of authority it does not have to sanction the exercise by Criminal Term of authority it did not have. That the particular defendant involved in this case would receive a windfall results from the failure of the prosecutor to move for correction of the sentence within the time the Legislature has allowed for corrective action and from the fact that the Legislature has in the Criminal Procedure Law enacted an explicit limitation upon when a sentence, as distinct from the clerical record of the sentence, may be changed. If change in the law is needed, and I believe it is, it should come from the Legislature, not from this court.
CPL 430.10 provides: “Except as otherwise specifically authorized by law, when the court has imposed a sentence of imprisonment and such sentence is in accordance with law, such sentence may not be changed, suspended or interrupted once the term or period of the sentence has commenced.” When a sentence commences is defined by section 70.30 of the Penal Law: for an indeterminate sentence, “when the prisoner is received in an institution under the *367 jurisdiction of the state department of correctional services” (subd 1); for a definite sentence, “when the prisoner is received in the institution named in the commitment” (subd 2).[1] It is undisputed that defendant was sentenced to an indeterminate sentence of zero to three years and had been confined on that sentence in Danamora State Prison for several months before the Criminal Term, on motion of the District Attorney, ordered the record corrected by ”resentencing the defendant to zero to eight years, nunc-pro-tunc.”
To circumvent the clear absence of jurisdiction, the People rely upon CPLR 5019 (subd [a]) and generalities in decisional law. The majority, ignoring the People’s efforts to apply the CPLR, provides a pastiche of civil and criminal cases that do not withstand analysis in the face of CPL 430.10 and cases to date construing it.
It may well be questioned whether CPLR 5019 would be helpful to the People in any event in light of the limitation of the curative orders it authorizes to a “mistake, defect or irregularity in the papers or procedures in the action not affecting a substantial right of a party” (italics supplied) . But the section is clearly inapplicable to the present situation for CPLR 101 explicitly states that the CPLR “shall govern the procedure in civil judicial proceedings” (italics supplied), and though the Criminal Procedure Law has no counterpart provision it has long been recognized that “it was intended by the Legislature that this Code [of Criminal Procedure] was to take the place of, and be substituted for, all of the statutes of the State bearing upon the subject, to which end provisions were made for every necessary step to be taken in every criminal case” (People ex rel. Hirschberg v Orange County Ct., 271 NY 151, 155). Nor in the face of “ The commands of the law-making power in matters wherein its fiat is supreme and final’ ” (id.) do generalities such as that “The law deals with realities and not fictions” (People ex rel. Sloane v Lawes, 255 NY 112, 117) or that “The Constitution does not require that sentencing should be a game in which a wrong move *368 by the judge means immunity for the prisoner” (Bozza v United States, 330 US 160, 166-167) help the People’s case, distinguishable as those cases are on their facts and because they involved no statutory command such as CPL 430.10.
Linchpins in the majority’s analysis are Bohlen v Metropolitan El. Ry. Co. (121 NY 546), People ex rel. Hirschberg v Orange County Ct. (supra), People v Harrington (21 NY2d 61) and the cases cited (p 364) to support the conclusion that CPL 430.10 “essentially restates the common law”. Bohlen, however, relied upon section 723 of the Code of Civil Procedure, from which is derived CPLR 2001, which has no counterpart in the CPL, and the language of which[2] allows correction of a “mistake” at “any stage of an action.” Aside from the fact, already noted, that the CPLR does not apply to criminal proceedings, the distinction between the two is obvious: the CPLR provision is broadly permissive while the CPL provision is expressly restrictive.
True it is that both Hirschberg and Harrington allowed corrections to be made and that in doing so Hirschberg relied upon Bohlen. Important to note, however, is that what was corrected in each was clearly a clerical error; in Hirschberg, “in recording the plea” as having been made to a felony rather than a misdemeanor; in Harrington, “in the failure of the clerk to make a record in his minutes of the offense after the sentence had been pronounced.” Moreover, Hirschberg recognized that there is no power in the courts to extend a time limit fixed by the CPL and quoted with apparent approval from People v Glen (173 NY 395, 400) the statement that “matters * * * regulated by the provisions of the Code of Criminal Procedure * * * however inconvenient, or even oppressive, they may appear to be in specific cases, the courts must apply * * * as best they can, for they embody the commands of the law-making power in matters wherein its fiat is supreme and final,” *369 and the Harrington court, acknowledging that once begun a sentence could not be vacated or changed, distinguished what it was approving as merely the correction of the record “to support the sentence as it had been imposed * * * by inserting the nature of the offense in compliance with section 485 of the Code of Criminal Procedure.” It is one thing to recognize an inherent power in the court to conform the record of ministerial acts performed by the clerk to the fact and quite another to use that as a springboard for correction not of the record but of the fact, i.e., the length of the sentence imposed as a discretionary, albeit perhaps inadvertent, act of the Judge.
Nor is the majority’s thesis that CPL 430.10 “restates the common law” a valid one with respect to the issue in this case. Each of the cases cited (People ex rel. Kuney v Adams, 168 Misc 285, 296, affd 256 App Div 802, affd 280 NY 794; People ex rel. Woodin v Ottaway, 247 NY 493, 496; and People ex rel. Holton v Hunt, 217 App Div 428, 431) deals with the power to suspend sentence and such reference as there is to codification of the common law speaks only to the fact that the commencement of imprisonment limitation on the court’s power “was a clear recogniton of the common-law distinction between the judicial power to postpone the execution of a judgment and the executive power to terminate the service of a sentence thereunder” (Holton, supra, at p 431 [italics in original] ; Kuney, supra, at p 296). Each also recognizes that as a result of the common-law separation of powers the courts are without power to suspend sentence after commencement of sentence, and none of them suggests that the Legislature had any thought of sanctioning a change in sentence, as distinct from a change in the records supporting the sentence, after the beginning of imprisonment.
As we have but recently re-emphasized, a Judge when he imposes sentence does not act clerically but in the exercise of discretion (People v Farrar, 52 NY2d 302, 305, 308). What the court now authorizes is not a change in the record made to reflect what was actually done, but a change in what was actually done, on the ground that it was not intended. We may accept the fact that the Judge intended *370 to impose an eight-year sentence for the words used were “Under all the facts and circumstances, the Court will follow the plea bargaining. The defendant is therefore sentenced to an indeterminate sentence of imprisonment which shall have a maximum term of three years and the Court imposes — of three years, and the defendant is committed to the custody of the State Department of Correction.” Repetition of the three-year maximum makes clear that we deal not with an error in recording what the Judge said, but at most an error of the Judge in saying it. But what he said was a valid and legal sentence within the discretion given him by statute. The fact that he erred in doing so does not make his action in imposing sentence clerical rather than discretionary. As a discretionary act it was, by statutory limitation, correctable only before sentence commenced; only if it were clerical could it be changed thereafter. The People could have moved for correction of the sentence to conform to the bargain either at sentence or at any time thereafter and before defendant arrived at the State institution, but once he was there the court was functus officio.[3]
Such has been the consistent holding of this court (People v Thompson, 251 NY 428; People ex rel. Sedotto v Jackson, 307 NY 291, 295; People v Harrington, supra; People v Yannicelli, 40 NY2d 598; Matter of Cedar, 240 App Div 182 186, affd 265 NY 620; Pitler, New York Criminal Practice Under the CPL, § 13.77). Closely in point is People v Thompson (supra), in which defendant was sentenced to a term of not more than one year for illegally practicing medicine. Governing statutes authorized either a fixed sentence or, if the sentencing Judge found defendant capable of being substantially benefited by correctional and reformatory purposes of the institution to which committed, an indeterminate sentence. In imposing a fixed term sen *371 tence the court made no specific finding of defendant’s capability in that respect but thereafter, on its own motion and over defendant’s protest, reconsidered the sentence and imposed an indeterminate sentence. Noting that the trial court “chose to impose a definite sentence, which it might not do, unless it decided that the offender was incapable of being substantially benefited”, we ordered the original sentence reinstated, saying (251 NY, at p 431): “The court had jurisdiction of the person of the offender and of the offense. Its original sentence did not exceed the penalty fixed by the statute. It seems to me obvious that under the circumstances, the validity or nullity of the sentence cannot be made dependent upon proof of the mental processes of the trial court or of the mental or physical capacity of the offender” (italics supplied). Moreover, Sedotto and Yannicelli cannot be distinguished, as the majority suggests, on the ground that the sentences of imprisonment imposed in those cases were not defective for neither is the sentence imposed on Minaya defective. It is because, as Sedotto put it, “the original sentence was not defective but was a valid exercise of judicial discretion [that], the County Judge * * * was without power thereafter” (307 NY, at p 295), and as Yannicelli noted, “since the term of imprisonment was lawful * * * the court had no power to alter it by re-sentencing them [defendants] to a different, in fact longer, term” (40 NY2d, at p 602), that the resentence imposed in this case is a nullity.
The legislative direction should be adhered to notwithstanding that the result in this case may be that the punishment does not fit the crime.[4] That the minutes strongly suggest that the Judge for some reason misspoke may be the predicate for statutory amendment but does not justify ignoring the existing statutory limitation upon *372 the power of the court. The reason that it does not is nowhere better stated than in the Second Circuit opinion in United States v Sacco (367 F2d 368, 369-370) : “We are of the opinion that a judge should not be permitted to increase a sentence clearly and explicitly imposed, after the prisoner has begun to serve it, even though the judge later recollects that he had intended at the time to decree a longer sentence for a conviction on a particular count but did not do so because he had inadvertently confused it with another count. This is not the case of an error in reporting or a purely clerical error or a judicial mistake corrected the same day or the imposition of a sentence of less than a mandatory minimum or similar flaws which present quite different problems. The possibility of abuses inherent in broad judicial power to increase sentences outweighs the possibility of windfalls to a few prisoners.”
The order of the Appelllate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli and Fuchsberg concur with Judge Wachtler; Judge Meyer dissents and votes to affirm in a separate opinion in which Judge Jones concurs.
Order reversed and the case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.

. By subdivision 3 credit is given against the sentence for “the amount of time the person spent in custody prior to the commencement of such sentence.”

. At any state of an action, the court may permit a mistake, omission, defect or irregularity to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded.

. Compare CPL 440.20 (subd 1), which permits a defendant to move to set aside his sentence, but only “upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law.” The obvious purpose of CPL 430.10 is to fix the point at which the lower court judgment is final, but the Legislature can, within the constraints of double jeopardy law, authorize correction of sentence even though valid and even after service of sentence has commenced, should it see fit to do so.

. See People v Ozarowski (87 Misc 2d 607, 612) where the sentencing court denied defendants’ application to reduce their sentences, notwithstanding that service of sentence had not commenced and that defendants, who were youthful offenders, had, during the years their case traveled though our courts, shown themselves to be “useful, hard working and well-intentioned.” The court’s reasoning was that “the Legislature of this State did not see fit to specifically empower the court to change a sentence which was legally authorized and valid when imposed.”