Kaye, J.
(dissenting). Arbitration being a matter of choice and consent, when arbitrators exceed the powers which the parties confer on them, their awards in principle are subject to vacatur. (CPLR 7511, subd [b], par 1, cl [iii].)
In both Matter of Silverman (Benmor Coats) and Norris v Cooper the arbitrators exceeded the powers conferred on them by the parties. In Silverman, although the dispute submitted to arbitration by the company and the estate *312 was limited to a subordinated loan the repayment of which was expressly made subject to consent of the company’s creditors, the arbitrator nonetheless fashioned a remedy which provided for full repayment to the estate without the creditors’ consent. In Norris, while the parties specifically excepted from the arbitrator’s reach the calculation of the company’s net after-tax operating profits, which were to be conclusively determined by its independent accountants, the arbitrator nonetheless fixed net profits contrary to the accountants’ determination. In my view, both awards should be vacated because they are beyond the powers conferred by the parties on the arbitrators. In neither case does the award reflect the choice or consent of the parties as evidenced by their agreements to arbitrate.
As the majority opinion shows, there is in fact virtually no restraint on arbitral excesses. The award may contravene principles of substantive law and rules of evidence, it may exceed the remedy requested by the parties, it may disregard the plain meaning of the arbitration agreement, and still it will be confirmed. Short of a violation of public policy or totally irrational result, yet to be found by this court, an award will not be set aside. While the majority recognizes that under CPLR 7511 an award may be vacated if the arbitrator exceeds a specifically enumerated limitation on his power, that relief too has been circumscribed, and is even further circumscribed today.
In Silverman the arbitrator, in overstepping his authority by providing for the repayment of subordinated debt without the creditors’ consent, attempted to accommodate the creditors, who were never made part of the arbitration proceeding, by providing for a long-term payout to the estate of the company’s “after-tax net income.” For purposes of his award, however, he placed ceilings on allowable business deductions by the company, to assure that there would be “after-tax net income” to pay the estate. However imaginative the arbitrator’s efforts may have been, the fact remains that he had no authority to direct repayment of subordinated debt to the estate without the consent of the company’s creditors. The creditors, who may well object to a schedule for repayment which can place subordinated obligations ahead of theirs, of course retain *313 their right to proceed against the company on its debts to them, as the majority acknowledges. But then the company is caught between the estate’s demands for repayment in accordance with the arbitration award and the creditors’ demands for payment under the subordination agreement — precisely the unhappy situation avoided in the first instance by the parties’ agreement which limited the arbitrator’s powers.
The Silverman award is confirmed because the limitation was not “an express limitation on the power of the arbitrator.” I respectfully disagree. The arbitration clause in Silverman was confined to paragraph 5 disputes, and paragraph 5, captioned “Subordinated Loan,” recited that repayment to the estate was “subject to the consent of the Bank and trade creditors.” Simple application of this express limitation on the arbitrator’s power requires no interpretation of the agreement. The court’s insistence that even such a limitation is insufficient establishes that, however plain, any restriction on the arbitrator’s power which is not fully spelled out in the same breath as the undertaking to arbitrate will simply be given no effect.
As Norris shows, even a limitation which is set forth in the arbitration clause may not be sufficient. In Norris v Cooper, Norris was to receive as consideration for acting as advisor and consultant to Cooper’s company, an amount equal to 25% of the company’s annual after-tax net operating profits. While disputes were to be subject to arbitration, the arbitration clause explicitly limited arbitrable controversies by the phrase “except as otherwise provided in paragraph 4 above.” Subdivision (d) of paragraph 4 made the company accountants’ determination of after-tax net profits and after-tax net operating profits “final, conclusive and binding upon the parties,” provided only that the determination “be made in accordance with generally accepted accounting principles, applied on a consistent basis”. Contrary to the determination of the accountants that a $3,000,000 payment received from a third party for cancellation of a distributorship agreement was not after-tax net operating profits of the company, the arbitrator awarded Norris 25% of this amount, or $750,000.
*314 The majority acknowledges that this award transcends the arbitrator’s power. This time, however, an improper award is confirmed on the ground that in seeking to set aside the award pursuant to CPLR 7511 (subd [b], par 1, cl [iii]), Cooper did not specify before Special Term that the arbitrator had exceeded his power by determining after-tax net operating profits. Had this argument been presented to Special Term, it is clear from the parties’ submissions in this court, as well as the court’s independent efforts, that Norris had no factual or legal basis to controvert the arbitrator’s lack of authority.* A new argument in support of the relief requested may be raised in this court for the first time when, as here, it could not have been obviated or cured if brought to the attention of the proponent of the award while the matter was before the arbitrator or the court below. (Persky v Bank of Amer. Nat. Assn., 261 NY 212, 218-219; Matter of Kaplan [Blumenfeld], 8 NY2d 214, 220; American Sugar Refining Co. v Waterfront Comm., 55 NY2d 11, 25, app dsmd sub nom. New York Shipping Assn. v Waterfront Comm., 458 US 1101); see Telaro v Telaro, 25 NY2d 433, 439). This rule of practice has long been acknowledged by this court (see Cohen and Karger, Powers of the New York Court of Appeals, §§ 161, 163; Wright v Wright, 226 NY 578; People v Bradner, 107 NY 1, 4; Cook v Whipple, 55 NY 150, 157).
The majority’s affirmance of the awards before the court today underscores the need for extraordinary caution at the outset, for once arbitration has been designated there is little hope of later containing it by way of judicial supervision. But electing arbitration should not be tantamount to assumption of the risk. Persistent denial by this court of judicial review even when the ground rules set by the parties are ignored by the arbitrator does not foster, but instead diminishes, the desirability of arbitration as a remedy of choice.
*315 Chief Judge Cooke (concurring in Matter of Silverman [Benmor Coats] and dissenting in Norris v Cooper). In Matter of Silverman (Benmor Coats), I agree with the majority that the arbitrator did not go beyond the scope of his authority and thus, the award may not be vacated. In Norris v Cooper, however, the arbitration clause explicitly limited the arbitrator’s power in resolving the dispute and the limitation was ignored. I agree with the position of the dissent that the issue of the arbitrator’s lack of power may be raised in this court. Accordingly, I join Judge Kaye’s dissent as to Norris v Cooper and would vacate the award therein.
In Matter of Silverman (Benmor Coats): Order affirmed, with costs.
Chief Judge Cooke and Judges Jones, Wachtler and Simons concur with Judge Meyer; Chief Judge Cooke concurs in a memorandum; Judge Kaye dissents and votes to reverse in a separate opinion in which Judge Jasen concurs.
In Norris v Cooper: Order affirmed, with costs.
Judges Jones, Wachtler and Simons concur with Judge Meyer; Judge Kaye dissents and votes to reverse in a separate opinion in which Chief Judge Cooke and Judge Jasen concur; Chief Judge Cooke dissents in a memorandum.

 The majority strains to suggest that question might have been raised about the accountants’ treatment of the $3,000,000, the court even reaching the point, on its own, of projecting company profits. But determination of the company’s profits was, by prearrangement of the parties, left exclusively to the independent accountants. No suggestion is made, by Norris or even by the court, of how their determination might have violated generally accepted accounting principles which, again by both parties’ choice, was the only basis for challenging the financial statements.