In the Matter of the Application of JAMES F. DONNELLY, for a Writ of Habeas Corpus to Inquire into the Causes of Detention of CLARK G. KUNEY and EDWARD A. SAUTER.*

Supreme Court, Special Term, New York County, June 23, 1938.

---

* See, also, 168 Misc. 308.

*James F. Donnelly [Merwin Lewis, Hugo Wintner* and *Robert P. Schur,* of counsel], for the petitioner.

*Thomas E. Dewey, District Attorney [Arnold Bauman* and *Thomas F. Moore, Jr., Deputy Assistant District Attorneys,* of counsel], for the People of the State of New York.

PECORA, J. This matter arises upon a petition for a writ of habeas corpus on behalf of Clark G. Kuney and Edward A. Sauter (hereinafter referred to as defendants) to inquire into the causes of their detention. The petitioner is one of their attorneys. The defendants were convicted of the crime of grand larceny in the first degree, and on May 1, 1936, sentenced to State prison for a period of years. They obtained a certificate of reasonable doubt. The judgment of conviction was affirmed February 5, 1937, by the Appellate Division (*People* v. *Commonwealth Bond Corp.*, 250 App. Div. 701) and on January 4, 1938, by the Court of Appeals, with two judges dissenting (276 N. Y. 611).

On January 18, 1938, the judge who had tried the defendants granted a motion for an order to show cause why a new trial should not be granted to the defendants upon the ground of newly-discovered evidence. On examination of the application the trial judge found himself unable to grant it, by reason of the limitations of section 466 of the Code of Criminal Procedure, on the ground that more than one year had elapsed since the judgment. He thereupon, on February 28, 1938, denied the motion for a new trial, saying, however, in his opinion: "While I shall not suspend sentence, I shall indefinitely suspend the execution thereof and an order may be entered to that effect." Later he decided to reinvestigate the matter because of representations made to him by groups of bondholders of the Commonwealth Bond Corporation and by the trustee in bankruptcy, which apparently persuaded him not to temper justice with mercy in the case.

The hearings before him were reported stenographically. While no formal evidence appeared in the minutes, nevertheless, defendants' counsel was present, together with the district attorney and other interested parties, and from all appearances the trial judge gave weighty consideration to the course to be adopted in the matter. He finally decided to let the original judgment be carried out.

There may be doubt on the record, as to whether the judge's expressed intention to suspend execution had actually been consummated and thereafter revoked. I shall, however, for purposes of an intendment most favorable to defendants, assume that the

trial judge first suspended the execution of the sentence, and thereafter, upon further consideration of the facts, without any formal hearings as upon a trial, but upon informal procedure without the presence of the defendants, revoked the suspension of execution.

The position of the petitioner is that the judge's power at trial term was exhausted when he suspended the execution of sentence, and thereafter he had no power to revoke his action. Even if he did have jurisdiction, petitioner argues, he could not have effectively done so, without proof that defendants had violated the implied probation which, it is claimed by petitioner, was connected with the suspension of the sentence.

A preliminary point in opposition by the district attorney is that an application in the nature of habeas corpus does not lie in a situation of this character, because there is no evidence of a total want of jurisdiction. I am compelled to overrule this objection. The petition is expressly based upon the fact that there was a total want of jurisdiction on the part of the trial judge to revoke the suspension. In such a case imprisonment awaiting the disposition upon an appeal would be unjust to the defendants. It is not sufficient answer to an application that the prisoner has a remedy by appeal. In cases involving the claim of double jeopardy, where a defendant could plead prior jeopardy as a ground for acquittal upon the second trial, it has been held that habeas corpus is the appropriate remedy, although the plea of double jeopardy was available as a complete remedy upon a second trial. (*People ex rel. Stabile* v. *Warden*, 202 N. Y. 138; *People ex rel. Brinkman* v. *Barr*, 248 Id. 126.)

In *People ex rel. Sandnes* v. *Sheriff of Kings County* (164 Misc. 355) I allowed habeas corpus, even though relief could have been obtained by showing, on appeal, that the temporary injunction order alleged to have been violated, was void. I quoted from the well-known case of *People ex rel. Tweed* v. *Liscomb* (60 N. Y. 559), as follows: " In *People* v. *Cassels* (5 Hill, 164), the court, by BRONSON, J., say that the prisoner had an undoubted right, when brought before the commissioner on *habeas corpus,* to show that the committing magistrate acted without authority, notwithstanding the commitment recites the necessary facts to give jurisdiction; that no court or officer can acquire jurisdiction by the mere assertion of it." I also said that when a lapse occurs on the part of the judiciary in disregard of its jurisdiction, with the resultant unlawful imprisonment of one, the most effective cure is by a writ of habeas corpus, as the slower processes of appeal may bring relief so belatedly as to render it practically valueless.

The grievance of defendant, which challenges the jurisdiction of the trial court to revoke the suspension of execution of a sentence, makes it necessary to inquire at some length into the power of the court, both at common law and under the statutes. The several scattered provisions on the subject in the different portions of the statute books, involving at times a necessity of reconciling incongruities in text, and the historical development of the probation system, which the petitioner claims have become an integral part of the power to suspend, render appropriate a treatment of the subject at greater length than would otherwise be advisable.

While the power to suspend sentence or the execution of it, seems to be inherent in the courts as a matter of principle, this is not a subject of universal recognition. Even in this State at one time the existence of the power was denied in *People ex rel. Benton* v. *Court of Sessions* (66 Hun, 550), decided in the January term of 1893. There a clerk of a mercantile firm, of previous good character, was convicted upon his plea of guilty of the crime of grand larceny in the second degree. By reason of mitigating circumstances and his previous good character, petitions were presented by numerous citizens, praying that the sentence be suspended. The county judge, presiding over a Court of Sessions of three, sentenced him to imprisonment, with two of the justices dissenting and advising that the judgment of the court be that sentence be suspended. Being further detained by the sheriff, the prisoner was thereafter discharged from commitment on habeas corpus, on the ground that the sentence pronounced by the county judge was illegal, and the Court of Sessions was directed to pronounce a legal sentence. Thereupon that court directed that sentence be suspended during good behavior, the county judge dissenting.

Upon the application of the district attorney a peremptory mandamus was granted by the Supreme Court at Special Term, commanding the Court of Sessions to proceed to judgment and to sentence the defendant in accordance with the statute. The order granting the writ was affirmed at General Term, as mentioned before. The ground upon which that court acted was that section 12 of the Penal Code devolved a duty upon the court authorized to pass sentence, to determine and impose the punishment prescribed. The suspension of sentence was held to be a violation of the mandate of the statute to impose such sentence. The case was appealed, and the decision reversed by the Court of Appeals under the title of *People ex rel. Forsyth* v. *Court of Sessions* (141 N. Y. 288), in an opinion which has been much admired for its

scholarship and frequently cited by courts of other jurisdictions. The suspension of sentence was thus reinstated.

But prior to the reversal, the Legislature amended section 12 of the Penal Code, so as to grant to the courts the power which the General Term declared that it lacked. This was accomplished by chapter 279 of the Laws of 1893, which amended section 12 of the Penal Code by directing that " Such court may in its discretion suspend sentence, during the good behavior of the person convicted, where the maximum term of imprisonment prescribed by law does not exceed ten years and such person has never been convicted of a felony."

At the time of the argument of the appeal this amendment was already in force, and the district attorney admitted that it was applicable to the case, although enacted since the writ of mandamus was issued. He argued, however, that the amendment encroached upon the power of the Governor to grant reprieves and pardons. The Court of Appeals brushed this contention aside, saying: " The power to suspend sentence and the power to grant reprieves and pardons, as understood when the Constitution was adopted, are totally distinct and different in their origin and nature. The former was always a part of the judicial power. The latter was always a part of the executive power. The suspension of the sentence simply postpones the judgment of the court temporarily or indefinitely, but the conviction and liability following it, and all civil disabilities, remain and become operative when judgment is rendered. A pardon reaches both the punishment prescribed for the offense and the guilt of the offender. It releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. It removes the penalties and disabilities and restores him to all his civil rights. It makes him, as it were, a new man, and gives him a new credit and capacity. (*Ex parte Garland*, 4 Wall. 333; *United States* v. *Klein*, 13 id. 128; *Knote* v. *United States*, 95 U. S. 149.)" While passing upon the validity of the statute, it nevertheless based its decision upon the inherent right of the court to suspend judgment until the next term of the court or indefinitely; and it held that the provisions of section 12 prior to the amendment, devolving a duty on the court to impose sentence, were only declaratory of the laws that always existed, and were not inconsistent with the power to suspend judgment. In reaching this decision it reviewed the text writers, the decisions based upon the English common law, and the American authorities, holding that the power to suspend sentence existed at common law.

In arriving at its conclusion on this point, as well as on the validity of the statute, it thus expressed its views on the propriety of the condition of good behavior attached to the suspension of the judgment, saying: " The power to suspend the judgment during good behavior, if understood as expressing a condition, upon the compliance with which the offender would be absolutely relieved from all punishment and freed from the power of the court to pass sentence, is open to more doubt. The legislature cannot authorize the courts to abdicate their own powers and duties or to tie their own hands in such a way that after sentence has been suspended they cannot, when deemed proper, and in the interest of justice, inflict the proper punishment in the exercise of a sound discretion. Nor can the free and untrammeled exercise of this power or the right to pass sentence according to the discretion of the court be made dependent upon compliance with some condition that would require the court to try a question of fact before it could render the judgment which the law prescribes. The statute must not be understood as conferring any new power. The court may suspend sentence as before, but it can do nothing to preclude itself or its successor from passing the proper sentence whenever such a course appears to be proper. This, we think, is all that the statute intends, and that was the only effect of the judgment. It is a power which the court should possess in furtherance of justice, to be used wisely and discreetly, and it is perhaps creditable to the administration of justice in such cases that while the power has always existed no complaint has been heard of its abuse." I have quoted at some length from the opinion because it is the basis upon which so many of the subsequent decisions rest, and upon which some of the subsequent legislation has been founded.

It is to be observed that the opinion holds that the power of the trial court in deferring sentence cannot be limited merely by the right to suspend judgment during good behavior, but may be exercised for any reason which appeals to its discretion. The reasons why the court should have such power without the imposition of a future condition are also stated in the *Forsyth* case, and are peculiarly applicable to the facts in the case at bar: " The Court of Sessions is a court possessing superior criminal jurisdiction and common-law powers. (*People* v. *Bradner*, 107 N. Y. 1.) It possesses all the powers formerly exercised by superior courts of criminal jurisdiction in England, except so far as these powers have been changed or abrogated by statute. There can, I think, be no doubt that the power to suspend sentence after conviction was inherent in all such courts at common law. The practice had its origin in the hardships resulting from peculiar rules of criminal

procedure, when the court had no power to grant a new trial, either upon the same or additional evidence, and the verdict was not reviewable upon the facts by any higher court. The power as thus exercised is described in this language by LORD HALE: ' Sometimes the judge reprieves before judgment, as where he is not satisfied with the verdict, or the evidence is uncertain, or the indictment is insufficient, or doubtful whether within clergy. Also when favorable or extenuating circumstances appear and when youths are convicted of their first offense. And these arbitrary reprieves may be granted or taken off by the justices of gaol delivery, although their sessions be adjourned or finished, and this by reason of common usage.' (2 Hale P. C. ch. 58, p. 412.) This power belonged of common right to every tribunal invested with authority to award execution in a criminal case. (1 Chitty Cr. L. [1st ed.] 617, 758.) " As a corollary of the power to suspend sentence, it is also pointed out in that case that the court may pass sentence in the future, whenever such a course is deemed proper.

In fact, section 470-a of the Code of Criminal Procedure, enacted by chapter 651 of the Laws of 1893, and by the same session that amended section 12 of the Penal Code, expressly allowed the court which had suspended the sentence to impose any sentence in the future, which might seem proper to it. That act also added section 470-b, the effect of which merely was to count a conviction as a previous offense, for the purpose of indictment and conviction for a second offense, notwithstanding the suspension of the judgment after the prior conviction. Section 12 of the Penal Code became section 2188 of the Penal Law, but its language remained virtually unchanged until 1918, so far as the right of suspension is concerned, except for the conferring of a similar power to suspend sentence upon the Court of Special Sessions, and making provision for probation in the case of children under sixteen. The occasion for the amendment of 1918 in adding a statutory power to impose sentence and suspend its execution is historically interesting, and will appear presently.

On several occasions prior to 1918 the court had interpreted the right to suspend sentence not merely as the power to defer its imposition, but as a power to pass sentence and then direct its suspension. In *People* v. *Goodrich* (149 N. Y. Supp. 406) the question arose whether the court had the power to pass sentence, direct suspension of it, and thereafter to revoke such suspension. It was held that the court possessed the power both at common law and under the statutes. The inherent power of the Supreme Court over its own decrees, both in pronouncing judgment and in suspending the execution of the same, it was ruled, would seem to follow

from its constitution and the very nature of its jurisdiction. Indeed, such power has rarely been questioned. After citing a number of authorities, including the *Forsyth* case (*supra*), the opinion continues: " But it is urged that the above cases all related to the postponement of sentence, while the case at bar was a postponement of the execution of a sentence after it had been passed. It is difficult to see any distinction between the two cases. If the court possesses inherent power to postpone the passing of sentence, why should it not possess a like power to postpone execution of a sentence after it has been pronounced? As is said in *People* v. *Fabian* (126 App. Div. 97) the suspension of sentence in no way disturbs the finding, but merely postpones the imposition of punishment. Why may not the same result be accomplished by postponing execution? " And so, assuming the existence of this right, the opinion sustained the power to revoke the suspension of execution, saying: " Nor can the free and untrammeled exercise of this power, or the right to pass sentence according to the discretion of the court, be made dependent upon compliance with some conditions that would require a court to try a question of fact before it could render the judgment which the law prescribes. I think the suspension of judgment in this case was a matter of grace, not of right, to the defendant, that she thereby acquired no vested rights, and the court had the right in its discretion to cancel and revoke the same."

In *People ex rel. Schindler* v. *Kaiser* (95 Misc. 681) there was a similar question as to the right to suspend the execution of a sentence. In that case section 483 of the Code of Criminal Procedure was invoked by the relator to the effect that a person who has been released on probation after the pronouncement of judgment and the suspension of execution thereof, may have his suspension revoked, whereupon the judgment shall be in full force and effect for the unexpired term. The relator claimed that there was no authority to revoke the suspension of execution and to sentence her for the original term, because such term expired, under the language of the statute, after the original term of imprisonment. The court overruled the contention on a point which is of particular interest here in holding that the sentence was not imposed upon the relator by virtue of the provisions of section 483, but under the common law power possessed by the court; and that power carries with it, after the revocation of an order suspending execution, the authority to resentence for the original term for which sentence might have been imposed. Of particular interest is a statement or recognition of the common law right of the court to suspend execution of the sentence and to revoke such suspension, apart from any scheme of probation, the court saying as follows:

" In a certain sense it probably can be said that any person convicted and by order of the court set at liberty, subject to the right of the court for any reason to revoke its order, is at liberty on probation. We take it, however, that when the word ' *probation* ' is used in the statute it has reference to the general scheme of probation established and authorized by statute, where the probationer is expressly made subject to the control, direction, and discipline of the court through probation officers or otherwise, as prescribed in the statute law.

" Subdivision 2 of section 483 also provides that in cases arising under that section the court ' shall place such defendant on probation under the charge and supervision of a probation officer during such suspension.' None of these things were done in the case at bar. We, therefore, must conclude that the relator was given the benefit of only a common-law suspension of the execution of the sentence, and not one under the statute, and when the suspension was revoked it only remained to carry out the terms of the original judgment providing for a year's imprisonment."

Two cases thereafter arising in the Appellate Division seem to impair the authority of both the *Goodrich* and the *Kaiser* cases just quoted, and undoubtedly gave rise to the amendments of 1918.

In *People .v. Boehm* (176 App. Div. 401 [4th Dept.] the execution of part of the judgment was suspended, but such action was thereafter revoked. As the suspension was for an indefinite time, the majority of the court held that there was no authority in the Code of Criminal Procedure or the Penal Law to indefinitely suspend the execution of a sentence after it has been pronounced. It arrived at the result, therefore, that since the suspension was illegal it was properly set aside, and the judgment should be enforced. In a dissenting opinion the minority proceeded on the theory that the term of the original sentence had expired, and it was unjust to keep the prospect of indefinite imprisonment before an offender, the execution of whose sentence had been suspended. The difficulty raised by the decision in that case was removed, as has been observed, by the legislative enactment the following year.

The second case, *People ex rel. Hirschberg* v. *Seeger* (179 App. Div. 792), is even more interesting, because it expressly refers to its disagreement with the *Goodrich* and the *Kaiser* cases, from which I have quoted at length above. In that case the court specifically limited the application of the *Forsyth* case to the power to *suspend the imposition of a sentence* indefinitely. It referred to the opinion of Chief Justice White in *Ex Parte United States* (242 U. S. 27), in which the right to suspend a sentence indefinitely was

denied in Federal cases, but it held itself bound, in State criminal cases, to follow the decision of the Court of Appeals. It denied, however, the power to *suspend the execution of a sentence* after it had been pronounced, except to stay it temporarily for purposes of appeal or the like. It limited the right to suspend executions strictly to a probation case for the period of probation under section 483 of the Code of Criminal Procedure.

The *Hirschberg* case was almost immediately followed by the amendment of section 470-a of the Code of Criminal Procedure and section 2188 of the Penal Law. By chapter 457 of the Laws of 1918, amending the latter, the court was expressly authorized to impose a sentence and suspend the execution of all or part of the judgment, and either in the case of suspension of the sentence or suspension of execution thereof, to place the defendant on probation. It further provided for the right to revoke the suspension of the execution of the sentence at any time during the period for which a maximum sentence would have run from the time of the original sentence, and in that event to impose any punishment which might have been imposed at the time of conviction. Section 470-a of the Code of Criminal Procedure was amended by chapter 467 of the Laws of 1918 so as to provide for the revocation of the suspension of execution, parallel to the manner specified in section 2188 of the Penal Law.

It is my view that the 1918 amendment had the effect of restoring to full authority the expressions contained in the *Goodrich* and *Kaiser* cases regarding the right of the court to suspend the execution of a sentence, as well as to suspend its imposition, and also to revoke it thereafter — and this, regardless of any scheme of probation. I express this view of its effect in the light of the opinion of the Appellate Division of the Third Department in *People ex rel. Pasco* v. *Trombly* (173 App. Div. 497).

Evidently the attention of the appellate courts in the arguments in the *Hirschberg* and *Boehm* cases was not called to the views of the Appellate Division in the *Pasco* case, expressed in 1916. There the relator was convicted of grand larceny and sentenced to serve a term of ten years in State prison. The execution was suspended upon condition that the relator would leave Clinton county and remain outside of it for ten years. He failed to comply with the condition, and the order suspending the execution was revoked and he was sent to prison to serve out his sentence. A writ of habeas corpus was sued out on the theory that the court was without jurisdiction to revoke the order and direct the execution of the judgment. The *Forsyth* case was relied upon by the relator in support of his contention of lack of jurisdiction to suspend execution

of the sentence. The court overruled the contention, holding that the *Forsyth* case clearly supported the power of the trial court to suspend the execution of sentence as a matter of discretion, both at common law and under the statute.

The reasoning in the *Pasco* case ran to the effect that, while there was a reference to suspension in the Laws of 1893 during good behavior, this " did not limit the discretion of the court in imposing a specific condition on the party to whom the favor was granted. The court was not obliged to grant the favor at all; it merely had a discretionary power lasting during the good behavior of the relator, and the court had a right to impose any lawful condition to its grant of a favor, and it did not abrogate its powers because it became necessary subsequently to have evidence that the relator had failed to perform this condition any more than it would have abrogated its powers by making the condition that of good behavior, which might have required evidence to show that this condition had been broken. Clearly, the Legislature, in providing that the court might suspend sentence during good behavior, did not intend that the court should lose its control over the judgment because it might be necessary to bring evidence before it that the relator had been guilty of bad behavior, and this would be the result if the relator's construction of the law is to be upheld."

The court also overruled the contention that formal evidence of a breach of condition had to be taken, interpreting the *Forsyth* case as clearly holding that the Legislature could not interfere with the judicial discretion in such a manner as to take away the legitimate powers of the court in dealing with its judgments. While it was not a proper exercise of discretion of the court, in the opinion of the Appellate Division, to suspend sentence upon condition that the relator take himself outside of the jurisdiction of the court, the fact that the court might have erred in prescribing that condition did not operate to make the granting of a favor equivalent to a pardon for the offense. It, therefore, concluded that " the relator having been within the jurisdiction of the court, it was proper at any time to revoke the order suspending the execution of the sentence, and neither the Legislature nor the courts have ever attempted to limit this power except to the discretion of the court."

It is thus evident that through the period covered by the amendments of 1918 to section 2188 of the Penal Law and section 470-a of the Code of Criminal Procedure, it may be considered as the law that the court had the absolute power to suspend sentence or to suspend execution, and thereafter to revoke the suspension in its discretion, without any hearing and without assigning any

cause, provided the suspension of the execution was not coupled with a probation condition. The law, as it stood, might be aptly expressed by the view in the decisions of another State, which is a correct reflection of the law as it had been settled by the course of judicial decision and legislation.

In that case, *Weber* v. *State* (58 Ohio St. 616; 51 N. E. 116), the court said: " The power to stay the execution of a sentence, in whole or in part, in a criminal case, is inherent in every court having final jurisdiction in such cases, unless otherwise provided by statute. The suspension, being in favor of the prisoner, is for his benefit, and is valid whether consented to by him or not. When the suspension is upon conditions expressed in the judgment, the prisoner has the right to rely upon such conditions, and so long as he complies therewith the suspension will stand. But when the suspension is without express conditions, as in this case, it is within the power of the court to set aside the suspension at any time during the same term, on its own motion, and to order the sentence to be executed. Cases cited by counsel are to the effect that the suspension may be set aside at a subsequent term; but this case does not require us to go to that extent, because here the suspension was set aside at the same term at which sentence was passed."

The question left open by the Ohio case as to whether the power existed to revoke the suspension at a subsequent term is not in doubt in this State. *People ex rel. Woodin* v. *Ottaway* (247 N. Y. 495) sums up the authority of the court of original jurisdiction to stay execution and to revoke the stay at any subsequent term of the court. The suspension and the revocation of suspension may even take place after the case has gone on appeal to the higher courts. It is, however, limited to the court of original jurisdiction, and cannot be exercised by the appellate courts. Furthermore, it cannot be suspended or interrupted after the commencement of the imprisonment under the sentence.

The latter provision, incorporated in the statute by chapter 568 of the Laws of 1920, amending section 2188 of the Penal Law, is evidently a statement of the delimitation of jurisdiction as between the judiciary and the executive. After imprisonment has commenced, the right and the duty to pass upon modifications of sentence devolve upon the executive branch of the government. The amendment of 1920 is thus merely a codification of what are obviously the rights and proprieties in such cases.

In *United States* v. *Murray* (275 U. S. 347) Chief Justice TAFT expressed at great length the reason for denying to the judiciary the right to interfere with the conditions of defendant's sentence after imprisonment has actually commenced, and he ruled that the

court was without jurisdiction to place a prisoner on probation after his imprisonment had actually begun.

It might be interesting to quote some observations in that case, which are perhaps supplementary to the reasons for suspension given in the *Forsyth* case. The quotation is of more than academic interest because the defendants in the case at bar argue that the entire scheme of probation must be read into the statute which deals with suspensions and their revocation.

The learned chief justice pointed out the desirability of delaying actual execution of sentence or providing for its suspension so that the stigma might be withheld and an opportunity for reform and repentence granted before actual imprisonment should stain the life of the convict. Many courts, he pointed out, have practiced and exercised this power to suspend sentence. By the decision of *Ex parte United States* (*supra*) the United States Supreme Court had denied the right of the District Courts to suspend sentence, suggesting legislation to permit probation. After eight years' struggle, he pointed out, such a statute was passed. The purpose of it is thus stated by the court: " The great desideratum was the giving to young and new violators of law a chance to reform and to escape the contaminating influence of association with hardened or veteran criminals in the beginning of the imprisonment. Experience has shown that there was a real *locus pœnitentiæ* between the conviction and certainty of punishment, on the one hand, and the actual imprisonment and public disgrace of incarceration and evil association, on the other. If the case was a proper one, great good could be done in stopping punishment by putting the new criminal on probation. The avoidance of imprisonment at time of sentence was therefore the period to which the advocates of a Probation Act always directed their urgency. Probation was not sought to shorten the term. Probation is the attempted saving of a man who has taken one wrong step and whom the judge thinks to be a brand who can be plucked from the burning at the time of the imposition of the sentence. The beginning of the service of the sentence in a criminal case ends the power of the court even in the same term to change it. (*Ex parte Lange*, 18 Wall. 163.) Such a limit for probation is a natural one to achieve its end."

Let us now look at the provisions of the probation system in this State to the extent to which they are relevant here, in order to answer the question whether they are so interlocked with the provisions for suspension of sentence, as to require that they be read together. The relevancy of this consideration briefly is that as the probation system has developed it has become both a matter of well established practice as well as of statutory enactment that

no probation should be terminated unless the person on probation should have an opportunity to be heard on the question.

Perhaps the consideration of the entire subject of probation can better be understood in its historical development in the statutes in order to explain apparently conflicting provisions in the enactments. The first system of probation which involves supervision of a person under suspended sentence to watch over his good behavior was adopted in 1901. This affected several sections of the Code of Criminal Procedure. With the adoption of section 11-a of the Code of Criminal Procedure (Laws of 1901, chap. 372, repealed by Laws of 1928, chap. 460) a more elaborate system of probation, with the appointment of a probation officer, was provided. Section 483 of the Code was amended in harmony to provide that the court, upon suspending sentence or execution of it, might place the person on probation under the charge of a probation officer. These provisions, however, did not, in my opinion, make the attachment of a probation condition mandatory upon the court when it suspended sentence or execution thereof. Consequently, the revocation of suspension was not necessarily equivalent to revocation of probation. Thus, section 470-a of the Code of Criminal Procedure distinctly shows that the suspension of sentence and suspension of execution are not necessarily coupled with the condition of probation.

The entire system of probation, however, was amended in 1928. Section 11-a, referred to before, was repealed and a new system of probation officers, conditions of probation, and physical, mental and psychiatric examination of probationers embodied in this statute. The subject was covered by sections 927 to 939 of the Code of Criminal Procedure, and the act by which it was adopted was chapter 460 of the Laws of 1928.

An argument stressed by petitioner in the instant case in support of his contention that this probation system was engrafted upon the statutes dealing with suspension and revocation of it is based upon the wording of section 927, which contains a series of definitions, beginning as follows:

" For the purposes of this act the following terms have the following meanings:

" The term ' placed on probation ' includes suspension of sentence or suspension of execution of judgment."

From this petitioner argues that there can be no suspension of sentence or suspension of execution of judgment without placing the person on probation. With this as a premise he draws his own conclusion, namely, that there can be no revocation of the suspension without the same type of procedure as is followed in revoking proba-

tion. Incidently, too, he argues that even if the suspension of execution was accomplished without probation, this mistaken procedure exhausted the power of the court in the premises, and defendants are entitled to complete discharge from custody. I shall consider the probation argument first, reserving the consideration of the latter incidental point for later discussion.

The definition mentioned in section 927 is obviously an example of faulty draftsmanship. All the definitions there are "for the purposes of this act," meaning chapter 460 of the Laws of 1928. In that entire act, however, the term "placed on probation," except in the definition itself, is utterly missing. The whole section deals only with events subsequent to the beginning of probation, including the officers who supervise the probationers and violations and revocations of probation. It also contains something about conditions of probation, but this, again, refers to future conduct subsequent to the beginning of probation. The internal evidence in the language as used, together with the language of section 2188, as amended in 1928 by chapter 841, indicates beyond a doubt that what was intended by the so-called definition was this: "This act deals with situations where persons have received suspension of sentence or suspension of execution of judgment, and have at the same time been placed on probation." It does not mean that suspension of sentence or suspension of execution thereof necessarily includes placing on probation.

A reading of section 2188, as amended in 1928, makes this point clear. That section, as amended by chapter 841 of the Laws of 1928, reads as follows: " Suspending sentence; suspending execution of judgment; probation. The court, judge, justice or magistrate authorized to impose sentence upon conviction may, except as otherwise provided in this section, (1) suspend sentence, or (2) may impose sentence and suspend the execution of the judgment. In either such case he may place the defendant on probation. Neither sentence, nor the execution thereof, shall be suspended, nor the defendant placed on probation (a) if convicted of a crime punishable by death or life imprisonment, or (b) if the defendant convicted is a fourth offender under section nineteen hundred and forty-two, or (c) if the person is convicted of a felony committed while armed with a weapon as provided in section nineteen hundred and forty-four. No person, however, shall be placed on probation until an investigation and report shall have been made of the circumstances of his offense, his criminal record, if any, and his social history and presented to and considered by the court, judge, justice or magistrate. In case of a felony, before the sentence or execution of judgment may be suspended or the defendant placed on proba-

tion, the district attorney shall have been given an opportunity to be heard and the court shall enter in the minutes the reasons for such action. The court may, at any time within the term of such defendant's probation or of the sentence to which he is liable, revoke the order suspending sentence or its execution and may impose such sentence or make such commitment as might have been made at the time of the conviction. Provided, however, that the imprisonment directed by the judgment, shall not be suspended or interrupted after such imprisonment shall have commenced."

An analysis of that section shows an absence of the old statutory condition of suspension during good behavior, which was eliminated in 1918. Instead we find a provision for the right of unconditional suspension of sentence or the imposition of sentence and the suspension of execution of it. Then follows the statement that in either case the defendant may be placed on probation. That does not mean that he *must* be placed on probation. The correctness of this interpretation is evidenced by the wording in the sentence following, that " neither sentence nor the execution thereof, shall be suspended, *nor the defendant placed on probation.*" It is further evidenced by the following language: " In case of a felony, before the sentence of execution of judgment, may be suspended *or the defendant placed on probation.*" Also, by the subsequent phrase: " The court may, at any time *within the term of such defendant's probation* or of the sentence to which he is liable." The disjunctive expressions, preceded by the word " or " in all the excerpts, indicate that the ordinary suspension or revocation of suspension is balanced against, or contrasted with, the situation where the person convicted was placed on probation. It is true that no person could be placed on probation unless his sentence or its execution has been suspended. But the converse is not true. A person may have his sentence or its execution suspended without being placed on probation.

In the consideration of this case no account has thus far been taken of the effect of the amendments to section 2188 subsequent to the year 1928. In 1930 a provision was added making the preliminary probation type of examination of persons convicted of felony mandatory where it was intended to suspend sentence or the execution thereof. That examination, involving an investigation into his criminal history and social record, had previously been required only where the convicted person was to be placed on probation. The amendment of 1930 tends to emphasize the view expressed here that the scheme of statute law which dealt with suspension of sentence and suspension of execution thereof did not carry with it the necessity of probation.

The statute was further amended in 1933 by chapter 193, which became a law April 12, 1933, and was to go into effect July 1, 1933. The act amended section 2188 of the Penal Law " as last amended by chapter 298 of the Laws of 1930." But chapter 517 of the Laws of 1933 amended section 2188, becoming a law April 27, 1933, and effective September 1, 1933. That act made no mention of chapter 193, passed only two weeks earlier, nor of any other amendment. Did it effect a repeal of the earlier chapter by implication? The question is not entirely academic in connection with the subject-matter involved in the instant case.

Let us examine the changes which the two amendatory acts of 1933 effected. The earlier act added to the statute as then in force the provision for a physical, mental and psychiatric examination of the convicted person, in writing, to be presented to, and filed by, the court prior to suspension of sentence in case of a felony or the placing on probation. A provision was also added for an undertaking by a probationer for the support of his family, if his offense was abandonment of dependents. Chapter 517 omitted the reference to reports to be examined and filed, of physical and mental examination. It also omitted the provision for a bond to be furnished by a probationer who had been convicted of abandoning his family. These omissions are not significant, because the items omitted are, in effect, contained in sections 931 and 932 of the Code of Criminal Procedure. Chapter 517 also inserted a provision for extending the period of probation from time to time within the longest period for which the defendant might have been sentenced upon conviction. For the purposes of the case at bar this is of no importance. It made a change, however, in the clause dealing with the revocation of suspensions, which is interesting. The new clause was worded as follows: " The court may, at any time within the term of such defendant's probation and while such probation is in force, whether as an original or as an extended term, revoke the order suspending sentence or its execution and may impose such sentence or make such commitment as might have been made at the time of conviction." The clause inserted a reference to the extended term of probation. The interest, however, is not in what it inserted, but in what it omitted. The clause had previously read that the court might revoke the order of suspension during the term of probation " or of the sentence to which he [defendant] is liable." The quoted words were omitted from chapter 517 of the Laws of 1933. A superficial consideration of this omission might lead to the conclusion that the statute intended thereafter to deprive the court of the summary power of revocation of suspension, unless the defendant had been previously

placed on probation, in which event revocation would require arraignment of the probationer and opportunity to be heard. (Code Crim. Proc. § 937.) This conclusion is ill-founded. Chapter 193 and chapter 517 of the Laws of 1933 are not inconsistent, and the later chapter cannot be deemed to repeal the earlier one by implication. Such a repeal is expressly forbidden by section 2500 of the Penal Law, which states that " no provision of this chapter, or any part thereof, shall be deemed repealed, altered or amended by the passage of any subsequent statute inconsistent therewith, unless such statute shall explicitly refer thereto and directly repeal, alter or amend this chapter accordingly."

In commenting upon this provision the court said, in *People* v. *Dwyer* (215 N. Y. 46, 51): " The general rule is that a statute ' is not repealed by implication, unless the two statutes are manifestly repugnant and inconsistent, or the later statute covers the whole subject-matter and was intended as a substitute for the former. \* \* \* A repeal of a statute by implication is not favored, and is only allowed when the inconsistency and repugnancy of the two acts are plain and unavoidable. \* \* \* The intent of the Legislature must prevail, and a statute will not be deemed to have been repealed by a later statute if the two are not clearly repugnant, unless the intent to repeal is clearly indicated.' (*Mongeon* v. *People*, 55 N. Y. 613, 615; *Smith* v. *People*, 47 N. Y. 330.) "

In fact, the question of the relation of the two forms of section 2188 was submitted to the Attorney-General by the Department of Corrections on June 8, 1933. (Opinion of Attorney-General, 1933, p. 508.) He reported that " There is no inconsistency between the two acts and both should be read together as constituting one entire statute." He then suggested that at the ensuing session of the Legislature a new section 2188 should be adopted, as a matter of convenience, consolidating both acts. He submitted a wording of the consolidation as to revocation of the suspensions of sentence of non-probationers, combined in chapter 193, but omitted from chapter 517 of the Laws of 1933. His suggestion was not followed by any subsequent legislative enactment; so that we have today the somewhat incongruous situation of two sections numbered 2188 differing in slight details, but both having the effect of law. Even if this is disputed, nevertheless section 470-a of the Code of Criminal Procedure is in full force and effect. That section provides for the revocation of suspension and the imposition of a sentence or the execution of the original judgment with or without modification, within the longest period for which the defendant might have been sentenced. Again the language is separate and apart from the revocation of probation because the

treatment of a probationer follows with express reference to a defendant on probation in the very next clause or portion of the grammatical sentence. Whatever we may say of the language of section 2188 of the Penal Law as amended by chapter 517 of the Laws of 1933, nothing there repeals, modifies or amends section 470-a of the Code of Criminal Procedure.

A few observations may be appropriate as to the relation between section 470-a of the Code and section 2188 of the Penal Law. The latter (and its predecessor section 12 of the Penal Code) originally was intended merely to confirm the right of the court to suspend judgment, section 470-a, providing for the imposition of judgment at any time within the longest period for which defendant might have been sentenced. When section 2188 was amended in 1918 to legalize, by statute, the right of the court to impose sentence and suspend its execution, a provision as to revocation of suspension was added, although such a provision was also added to section 470-a in briefer form. Until 1925 a parallelism was observed by the Legislature in amending the corresponding sections of the Penal Law and of the Code of Criminal Procedure. The amendment of 1920 added the provision to both statutes that suspension of sentence could not be effected by the court after imprisonment had begun, although logically and historically the clause came within the proper purview of section 2188 alone. In 1925 the provision empowering the court to suspend the execution of the sentence in whole or in part was amended by confining the authority of the court to the suspension of the entire sentence and not merely part of it. The corresponding change, which was linguistically necessary, was made in section 470-a. Thereafter no further amendments of that section were made, although in 1928 the entire section 2188 of the Penal Law was rewritten, without, however, contradicting or supervening any provision of 470-a. Nor do the amendments of 1933 supersede any of the provisions of section 470-a, nor even chapter 517 of the Laws of 1933, which cannot be deemed to repeal, by implication, anything contained in section 470-a.

We now come to the consideration of the other ground of objection raised by the petitioner to the effect that the power of the court upon the subject was exhausted when it suspended execution of the sentence, and it thus became, so to speak, *functus officio.*

He bases his entire argument in this connection upon *People ex rel. Mendola* v. *Brophy* (237 App. Div. 529). In that case the court had imposed a sentence of ten years' imprisonment in Auburn State Prison after a plea of guilty of grand larceny in the first degree. After the imposition of the sentence it suspended its execution. Six weeks later, on July 29, 1931, the prisoner was

brought before the court, which revoked the ten-year sentence and permitted him to withdraw his plea of guilty of grand larceny in the first degree and to plead guilty to grand larceny in the second degree, as a second offender, and sentenced him to five years' imprisonment in the State prison. The prisoner did not ask for a revocation of the first sentence, which was done, as the Appellate Division points out, upon the trial court's own motion. His plea of guilty to the crime of second degree larceny was not entirely a voluntary act on his part. Accordingly, he sued out a writ of habeas corpus, which was sustained, the court holding that the original sentence of ten years remained effective and the sentence upon which the relator was incarcerated was invalid.

The petitioner quotes at length from the opinion, but if he added to the quotation the three or four sentences preceding he would make evident that the case in no way helps him and in no manner sustains the proposition that the power of the court is exhausted after the suspension of the execution of a sentence. The fuller statement reads as follows: " There is nothing in the record to show what the reasons were for the action of the court on the 29th day of July, 1931, as above stated. No motion had been made by the relator to set aside the judgment when it was revoked. This is not a case where a change was made in the sentence during the period of probation as provided in section 2188 of the Penal Law. (*People ex rel. Woodin* v. *Ottaway*, 247 N. Y. 493.) Here a conviction of a lesser degree of crime was entered and a new sentence imposed for this lesser degree. The record shows no acquiescence by the relator in the action of the court revoking the judgment of conviction of grand larceny, first degree. The withdrawal of the first plea of guilty before entering of the new plea to a lesser degree occurred after the court, apparently of its own motion, had revoked the sentence. Unquestionably a court has power to correct a sentence when an erroneous one has been pronounced. (*People* v. *Trimble*, 60 Hun, 364; affd., 131 N. Y. 118; *People* v. *Davis*, 64 Hun, 636; affd., 135 N. Y. 646.) Here, however, there was nothing erroneous in the original sentence to justify such action. When the relator was sentenced on his plea of guilty of grand larceny, first degree, as a second offender, with suspension of the execution of the sentence, the court's jurisdiction over the matter was exhausted, except to correct errors or to grant a new trial under section 465 of the Code of Criminal Procedure or to revise the sentence under section 2188 of the Penal Law or to resentence the relator as a fourth offender."

It is to be observed that the court reaffirmed the right of the trial court to modify a sentence under the original conviction

after the execution of the sentence had been suspended. Both section 2188 of the Penal Law, referred to by the court, and its analogue, section 470-a of the Code of Criminal Procedure, provide for the exercise of this power. The fact that Presiding Justice SEARS refers to the right to change the length of the sentence during the period of probation does not mean that probation is a necessary condition connected with the suspension of the execution of a sentence. What the court meant was that the trial judge was without power, on his own motion, to revoke a sentence under the plea of guilty to one crime, and thereafter resentence the prisoner upon the plea of guilty for another crime. The exercise of its power, it is indicated, would have been valid if upon revocation of the first plea the court had modified the sentence without changing the record as to the character of the crime for which defendant was convicted. The quotation cannot mean that suspension of the execution of sentence exhausts the court's jurisdiction over the matter, because both sections 2188 of the Penal Law and 470-a of the Code of Criminal Procedure specifically reserve power in the court, before imprisonment has begun, to revoke suspension of the execution as well as to suspend the execution itself.

The analogy presented by the petitioner based upon the *Mendola* case is wholly futile. It may be observed that he is not entirely consistent in urging the *Mendola* case when he disputes the right of the trial court to revoke suspension of execution in the absence of violation of probation. If the revocation of the suspension of execution was illegal the suspension itself should also be illegal, because it was indefinite and without probation. He consistently could not argue otherwise, because, as has been said in *People* v. *Boehm* (*supra*), " if the suspension was illegal there is all the more reason for setting it aside and enforcing the judgment." It is true that the legality of the suspension for an indefinite time and without condition was ratified by statutory provisions passed after this case, namely, the 1933 amendments to section 2188 of the Penal Law and the parallel section, 470-a of the Criminal Code; but that does not affect the necessity for petitioner's conceding, in the interest of consistency, the position taken by the court in *People* v. *Boehm*. Such consistency will necessarily be fatal to the claim that the suspension cannot be revoked.

Now come defendants, at the eleventh hour, after their case has been fully considered, and present an affidavit to the effect that section 470-a of the Code of Criminal Procedure is unconstitutional in providing for a revocation of the suspension of execution of the judgment. The grounds of this contention are that it

deprives·them of their liberty without due process, places them in double jeopardy and deprives them of their constitutional right to trial by jury. Specifically their objection is that execution of the judgment having been suspended, the defendants should not be incarcerated again until the commission of some act which would justify their recommittal. To a great extent these objections have been anticipated in this opinion. If defendants doubt that *People ex rel. Forsyth* v. *Court of Sessions* (141 N. Y. 288) is completely applicable they will find a comprehensive answer to all their objections in *Burns* v. *United States* (287 U. S. 216), in the opinion of Chief Justice HUGHES. While it deals with the grievance of a petitioner held for violations of the terms of probation, it is equally applicable to a summary revocation of the ordinary suspension of execution without any probation. Said the high court:

" Probation is thus conferred as a privilege and cannot be demanded as a right. It is a matter of favor, not of contract. There is no requirement that it must be granted on a specified showing. The defendant stands convicted; he faces punishment and cannot insist on terms or strike a bargain. To accomplish the purpose of the statute, an exceptional degree of flexibility in administration is essential. * * * ' The court may revoke or modify any condition of probation, or may change the period of probation.' There are no limiting requirements as to the formulation of charges, notice of charges, or manner of hearing or determination. No criteria for modification or revocation are suggested which are in addition to, or different from, those which pertain to the original grant. The question in both cases is whether the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant. * * *

" The question, then, in the case of the revocation of probation, is not one of formal procedure either with respect to notice or specification of charges or a trial upon charges. The question is simply whether there was been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion. That exercise implies conscientious judgment, not arbitrary action. (*The Styria*, 186 U. S. 1, 9.) It takes account of the law and the particular circumstances of the case and ' is directed by the reason and conscience of the judge to a just result.' (*Langnes* v. *Green*, 282 U. S. 531, 541.) While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim and caprice."

In this State the court may revoke probations after an opportunity to be heard. (Code Crim. Proc. § 935.) But there is no requirement of formal procedure or trial upon charges in accordance with

the laws of evidence. The discretion of the court should not be trammeled by the requirement to try the matter of violation of any probationary condition as a formal question of fact, either by itself or with the aid of a jury. (*People ex rel. Forsyth* v. *Court of Sessions, supra.*) If it is so limited it will defeat its own object and largely restrict the discretionary exercise of the power to grant probation in the first instance. As is said in *Burns* v. *United States* (59 F. [2d] 721): " Unless the broad discretion to revoke be fully recognized, much greater caution will have to be exercised in extending this grace originally, and the benefits of the act will become greatly restricted."

In the instant case there has been no probation, and the defendants have obtained the original benefit of suspension of the execution of a sentence. That benefit was not a contract but a favor. It was based not upon the observance of a future condition but in consideration of circumstances which the court at the time deemed to entitle them to a suspension of the rigor of their punishment. The circumstance mentioned is the fact that the trial judge thought there were substantial grounds for a new trial which were rendered unavailable by a technicality of the law — the Statute of Limitations. He felt that something was due them in compensation for that of which they were deprived by a technicality. Accordingly, the execution of their sentence was suspended without any future condition attached.

Defendants, as was to be expected, do not question the right to suspend execution, but they claim double jeopardy inflicted upon them by its revocation. By what legerdemain the suspension of a sentence ever can be deemed an expiation I cannot see. The law surrounds the suspension of sentence by the trial court in cases of felony with certain natural safeguards in requiring an examination of the physical, mental and social record of the convicted person to be filed or placed for scrutiny before the court. No review of the action of the judge in suspending sentence is provided, and the suspension is vested in his sound discretion. Similarly, it is presumed that the court, in revoking the suspension, will not act arbitrarily, but upon a consideration of appropriate facts.

The minutes in this case show that the trial judge gave ample consideration to the circumstances before revoking, and that the attorneys for the defendants even participated in the discussions with the district attorney regarding the reasons why the sentence should not be permitted to stand in its original form. A reading of the minutes indicates anything but certainty that a new trial would have been granted by the court upon the motion, even if this had been legally permissible.

The eventual determination of the trial judge to let the original sentence stand was not, therefore, arbitrary, but based upon reasons which are not reviewable. I can conceive the theoretical possibility of a judge revoking his favor tyrannically. Such conduct might then be characterized as a gross abuse of discretion, although it would not be an act without jurisdiction which would justify habeas corpus. It might, in such an extreme case, even justify resort to the higher courts. But this is far from the situation in the case at bar.

Any grievance that defendants have should really be directed at the statute which bars them categorically from an application for a new trial on the ground of newly discovered evidence after a year has passed. This is a grievance, however, which only the Legislature can redress, or which, in a proper case, might cause the process of executive clemency to be invoked.

A writ of habeas corpus having been issued upon the petition, I have inquired into the causes of detention of the prisoners, and having found them legally sufficient, the writ is dismissed.