THE PEOPLE OF THE STATE OF NEW YORK ex rel. DOROTHY BLOOM, Relator, against RUTH COLLINS, as Superintendent of Women's House of Detention, Defendant.

Supreme Court, Special Term, New York County, February 17, 1949.

*Morris Weinfeld* for relator.

*John P. McGrath, Corporation Counsel* (*Morris W. Weiner* and *Bernice Rogers* of counsel), for defendant.

HOFSTADTER, J. The relator by writ of habeas corpus challenges the legality of her detention under three commitments made by a city magistrate, sitting in the Municipal Term of the City Magistrate's Court as a Court of Special Sessions, pursuant to section 130 of the New York City Criminal Courts Act.

On May 28, 1948, the relator pleaded guilty before the magistrate then holding the Municipal Term as a Court of Special Sessions, to two informations charging her with various violations of the Multiple Dwelling Law. One information (docket No. 2807) enumerated twenty-two items under various sections of the law in the premises 57 East 104th Street, while the other (docket No. 2808) enumerated twenty-nine items in the premises 55 East 115th Street, in the borough of Manhattan. On these pleas, the court on May 28, 1948, imposed on the relator a fine of $100 in the first case and a fine of $150 in the second and also sentenced her to thirty days in City Prison in each of the two cases, but suspended execution of each of the jail sentences. Perhaps not unnaturally nothing was said at the time to indicate whether the jail sentences, execution of which was so suspended, were to be served concurrently or consecutively. The relator was paroled until June 2, 1948, for appearance and payment of the fines imposed and she appeared on that date and paid the fines.

On June 2, 1948, the relator pleaded guilty before the same magistrate still holding the Municipal Term as a Court of Special Sessions to a third information (docket No. 2903), in which she

was again charged with violation of the Multiple Dwelling Law, this time with twenty-one items in the premises 67 East 104th Street. On this plea the court imposed a fine of $100 which was paid and sentenced the relator to thirty days in City Prison but suspended execution of this jail sentence.

When suspending execution of the foregoing three jail sentences the magistrate did not place the relator on probation or otherwise condition the suspension. On December 20, 1948, the relator appeared with counsel before the magistrate who after a hearing revoked the suspensions and ordered the relator to serve the three sentences consecutively. The relator by the present writ attacks the magistrate's jurisdiction in the circumstances to revoke the suspensions and to commit her.

At the outset it should be said that no merit is found in the relator's contention that the revocation and resultant commitment were made without adequate formal notation of the court's action. The docket entries and the minutes of the hearings at the time the sentences were pronounced originally and at the time the suspensions were revoked state fully exactly what the court did and furnish a complete record upon which the relator's rights may be determined. Moreover, when the relator was delivered into custody to serve the sentences, a certified copy of the judgment or sentence in each of the three cases was given to the Superintendent of the Women's House of Detention. This was a sufficient mandate of the court and authorized the superintendent to take the relator into custody.

Nor, in my opinion, was it necessary in suspending execution of the jail sentences to place the relator on probation or to attach any other condition to the suspension. The failure to impose conditions did not curtail whatever power the court had on December 20, 1948, to revoke the suspensions.

This brings us to a consideration of the question whether the revocation of the suspensions was within the magistrate's jurisdiction. Needless to say, the relator has not by her misdeeds, however many or shocking, forfeited the protection which the law gives her. If our institutions are to survive it is important today more than ever that no inroads be allowed, whatever the occasion, on the safeguards established to prevent restraint of persons except by due process.

The power of the court to revoke the suspensions must, in my opinion, be derived from section 2188 of the Penal Law and section 470-a of the Code of Criminal Procedure. In *People* v. *Stone* (25 N. Y. S. 2d 94) De Luca, J., writing for the Appellate Part of the Court of Special Sessions (1st Dept.), in a full and well-

considered opinion, expressed the view that section 470-a of the Code of Criminal Procedure confers on a city magistrate, acting as such, the power to revoke a suspension of the execution of sentence. In the course of the opinion Justice DE LUCA cited *People ex rel. Pringle* v. *Livingston* (135 Misc. 475), in which Justice LEWIS (now on the Court of Appeals bench) held section 2188 of the Penal Law to confer on a Court of Special Sessions like power to revoke a suspension. I, therefore, conclude that a city magistrate in the city of New York holding a court of Special Sessions has the power given by section 2188 of the Penal Law and section 470-a of the Code of Criminal Procedure to revoke a suspension of the execution of a sentence.

An instructive discussion of the power of criminal courts to suspend the execution of sentence and thereafter to revoke the suspension is found in the learned opinion of PECORA, J., in *Matter of Donnelly (Kunoy-Sauter)* (168 Misc. 285, affd. *sub nom. People ex rel. Kuney* v. *Adams,* 256 App. Div. 802, affd. 280 N. Y. 794).

The question remains whether the court had the power on December 20, 1948, to revoke the suspension of the execution of the three sentences previously imposed on the relator and thereupon to order the relator to serve those sentences. Section 470-a of the Code of Criminal Procedure, so far as here applicable, provides: " § 470-a. *Suspension of sentence; suspension of execution of judgment.* \* \* \* If sentence shall have been imposed and execution of the judgment suspended, the court may revoke the order suspending execution of judgment and order executed the judgment suspended or may modify the judgment so as to provide for the imposition of any punishment which might have been imposed at the time of conviction. The court may impose sentence or order judgment executed with or without modification as hereinabove provided at any time after such suspension of sentence or suspension of execution of judgment within the longest period for which the defendant might have been sentenced \* \* \*."

The court thus is empowered to revoke the suspension at any time after the suspension " within the longest period for which the defendant might have been sentenced ". What then was the longest period for which the relator might on May 28 and June 2, 1948, have been sentenced on the informations to which she pleaded guilty? The punishment for her offenses is prescribed in the Multiple Dwelling Law, which reads: " § 304. *Penalties for violations.* 1. Except as otherwise in this section specifically

provided, every person who shall violate or assist in the violation of any provision of this chapter shall be guilty of a misdemeanor punishable, for each offense, by a fine not exceeding five hundred dollars or by imprisonment for a period of not exceeding six months, or by both such fine and imprisonment.''

It is contended for the defendant that each of the items alleged in the informations constituted a distinct offense punishable as such. If we take the information in Docket No. 9808 as an example, we see to what lengths this contention leads. This information enumerates twenty-nine separate items, all relating to the same premises. The following are some of the items:

'' #31 — Rubbish was accumulated — yard — cellar — dumbwaiter shaft — front areaway.''

'' #47 — Rubbish and ashes were accumulated in cellar and yard.''

'' #72 — Rubbish was accumulated in yard court at East.'' The statement '' The surfaces were dirty and insanitary '' appears in five separate specifications, each relating to a different apartment in the same building. These items are illustrative of the method pursued in setting up the schedule of items in the informations. Aside from the duplication of some items, there are many instances of the same type of complaint, enumerated as a separate item because occurring in various parts of the building. If the defendant's argument is sound, the relator was, under this information, enumerating twenty-nine items subject to a maximum penalty of $14,500 and fourteen and one-half years imprisonment.

It is clear that all the items must be treated as constituting collectively a single offense or, each item must be treated as a distinct offense. There can be no middle course, for there is no guide by which the items may be grouped. Who is to say which of the items is serious enough to constitute an independent offense and which are so cognate or related as to form collectively but one offense? The information gives no help in the solution of the problem for it lists the items indiscriminately.

No authority is cited for the view that each item is a distinct offense. Aside from the far-reaching implications of this contention, I am convinced that when the relator pleaded to the informations and the presiding magistrate accepted her pleas, all concerned understood that each information charged but one offense in respect of the particular building mentioned in it. The original sentences abundantly support this conclusion and, bearing in mind that on the revocation of the suspensions the

court was empowered by section 470-a of the Code of Criminal Procedure to impose any punishment which might have been imposed when the relator pleaded guilty, the court's failure on December 20, 1948, to modify these sentences fortifies it. All these considerations impel me to hold that the longest period for which the relator might have been sentenced under section 304 of the Multiple Dwelling Law was six months on each information.

It is immaterial whether the original sentences were to be served concurrently or not, for, the time within which a suspension may be revoked, by the express language of section 470-a, runs not from the date on which service of the sentence, except for the suspension of its execution was to have begun, but from the date of the suspension itself.

Nor can I accept the defendant's contention that since the court might have sentenced the relator to an indeterminate term not in excess of three years in a penitentiary, pursuant to section 203 of the Correction Law, the period within which the suspension was revocable is three years. No authority is adduced to support this view. In my opinion the phrase '' within the longest period for which the defendant might have been sentenced '' in section 470-a of the Code of Criminal Procedure which is a State-wide statute and the authority relied on to sustain the power of revocation refers to the penalty prescribed by law for the crime or offense of which a defendant stands convicted and not to what may be done under the parole system adopted in certain cities.

The writ must, therefore, be sustained. The relator will be discharged from custody under the commitments in Docket Nos. 2807, 2808 and 2903, but will be remanded to custody under the commitments in Docket Nos. 6112 and 6150.