THE PEOPLE OF THE STATE OF NEW YORK ex rel. JACK GOLDBERG, Relator, against SHERIFF OF SUFFOLK COUNTY, Defendant.

County Court, Suffolk County, October 18, 1954.

*Sol Horenstein* for relator.

*Harry C. Brenner, District Attorney,* for defendant.

MUNDER, J. On February 8, 1954 the relator was convicted of book-making in violation of section 986 of the Penal Law, in the Court of Special Sessions of the Town of Brookhaven. He was sentenced to pay a fine of $500 and to serve a term of six months in the county jail, the execution of which jail sentence was suspended " on the representation by the defendant that he would

not again be involved in such activities ''. On October 1, 1954, in the Patchogue Village Police Court he was again convicted of book-making.

On October 11, 1954, a Brookhaven town policeman presented to the Justice of the Peace, who, on the earlier of these two convictions, suspended the execution of the jail term, an affidavit setting forth the fact of the second conviction. The Justice of the Peace thereupon signed an order summarily committing the relator to the custody of the Sheriff for the term of six months.

The relator sued out a writ of habeas corpus to test the legality of his present restraint. He strongly urges (1) that in any event he should have been accorded a hearing; (2) that the suspension of the execution of the six months' sentence, especially when conditioned upon his refraining from again engaging in similar illegal activities, constituted probation and (a) the suspension could not be revoked without the procedure outlined in section 927 of the Code of Criminal Procedure, and (b) by the form of this sentence the term of probation was fixed at six months and the suspension could not be revoked after the expiration of that period.

I shall consider these arguments in inverse order.

A court after conviction may suspend sentence, i.e. delay the imposition of a penalty, or it may pronounce a sentence and suspend the execution thereof. This may be done unconditionally or conditionally. In the latter case the condition is simply an expression of what the court will deem a valid reason for the revocation of the suspension.

If the favor of suspension is granted the court may place the defendant on probation. Conditional suspension is not the same as probation. The latter connotes organized supervision, the former is undirected.

Ordinarily where it appears to a court that the defendant presents little risk to society and that the probability of his engaging again in crime is remote, a suspended sentence is pronounced. Where again the risk appears small but some psychological influence is thought to be needed to keep the defendant in lawful pursuits then a sentence is imposed but the execution of it is suspended. Where, however, there is a hope of rehabilitation but only under supervision, the defendant is placed on probation.

In *Matter of Donnelly* (*Kuney-Sauter*) (168 Misc. 285; 168 Misc. 308) Mr. Justice Pecora said: '' It is true that no person could be placed on probation unless his sentence or its execution has been suspended. But the converse is not true. A person

may have his sentence or its execution suspended without being placed on probation" (168 Misc. 285, 300). In his opinion, which was affirmed (256 App. Div. 802), and again affirmed (280 N. Y. 794), Mr. Justice Pecora pointed out that despite the wording of section 927 of the Code of Criminal Procedure, it was not intended that suspension of sentence or execution thereof included probation or required such a construction.

Thus the procedural provisions of section 935 of the Code of Criminal Procedure, relating to a warrant, arraignment and hearing for violation of probation are not applicable where no probation has been directed. Such procedure, however, is required when a probationer is being dealt with. It is passing strange that the offender who needs supervision, the probationer who presents the greater risk, must be accorded a hearing while the lesser risk, the person under suspension without probation, may get none at all.

The plea that the form of the sentence has fixed the probationary term at six months is wholly without merit. In the first place the relator was not placed on probation; secondly, the fixing of a jail term does not limit the period of probation (Code Crim. Pro., § 933); and thirdly, where no term of probation is fixed by the court it is assumed that the probationary period is the maximum period provided by section 933 of the Code of Criminal Procedure (*People* v. *Foote,* 144 Misc. 134). In the case of a misdemeanor for which a maximum imprisonment is one year, the maximum period of probation is three years.

We come now to the question which seems to me to be more fundamental, that of whether the relator was entitled to an opportunity to be heard, in explanation at least, regardless of any particular statutory or other legal requirement. Here, on the affidavit of a police officer that the relator had again been convicted of book-making, an order was made directing the Sheriff to arrest and confine the relator.

I believe that the "opportunity to be heard" provided in relation to probation by section 935 of the Code of Criminal Procedure, as defined in *People* v. *Oskroba* (305 N. Y. 113, 117) is merely a statutory expression of a concept of simple American justice.

This concept could not be better expressed than was done by Mr. Justice Cardozo, in *Escoe* v. *Zerbst* (295 U. S. 490). In that case as in ours, there was a summary revocation of suspension and imprisonment without any court appearance, though, to be sure, the petitioner there had been placed on probation. There was an Act of Congress (U. S. Code [1940 ed.], tit. 18, § 725), in

relation to probation violations, which required that the probationer " shall forthwith be taken before the court ". In discussing the purpose of the mandatory statute Mr. Justice CARDOZO (p. 493) said: " Clearly the end and aim of an appearance before the court must be to enable an accused probationer to explain away the accusation. The charge against him may have been inspired by rumor or mistake or even downright malice. He shall have a chance to say his say before the word of his pursuers is received to his undoing. This does not mean that he may insist upon a trial in any strict or formal sense. *Burns* v. *United States, supra* [287 U. S. 216], at pp. 222, 223. It does mean that there shall be an inquiry so fitted in its range to the needs of the occasion as to justify the conclusion that discretion has not been abused by the failure of the inquisitor to carry the probe deeper. *Burns* v. *United States, supra.* That much is necessary, or so the Congress must have thought, to protect the individual against malice or oppression. Almost equally it is necessary, if we read aright the thought of Congress, for the good of the probation system with all its hopes of social betterment."

These " ends and aims " apply with equal force to a non-probation suspension of sentence or the execution thereof. They are in keeping with our traditional spirit of fair play which the law reflects. Thus I am of the opinion that the order made herein was improper and that a warrant to arrest and bring the relator before the court should have been issued.

There is a further reason, as to the order made here, why it is improper. This order does not revoke the prior suspension except by implication. There should be an express revocation and, in addition, a repronouncement of the sentence. In a case of this kind it is within the power of the court to modify the earlier sentence and provide for the imposition of any punishment that might have been imposed at the time of the conviction. (Code Crim. Pro., § 470-a.)

In our case it may be said that in view of the relator's conviction of another crime, it is an idle gesture to require an appearance before the court. As to that Mr. Justice CARDOZO had this to say (*Escoe* v. *Zerbst, supra,* p. 494): " It is beside the point to argue, as the Government does, that in this case a hearing, if given, is likely to be futile because the judge has made it plain how his discretion will be exercised in that already he has cancelled the suspension on the strength of an *ex parte* showing. The *non sequitur* is obvious. The judge is without the light whereby his discretion must be guided until a hearing,

however summary, has been given the supposed offender. Cf. *Snyder* v. *Massachusetts,* 291 U. S. 97, 116. Judgment ceases to be judicial if there is condemnation in advance of trial.''

The writ is sustained and the relator is discharged, though without prejudice to proceedings in relation to revocation of suspension in accordance with this opinion.